## S00G1904. FIRST DATA POS, INC. v. WILLIS et al.
### (546 SE2d 781)

SEARS, Justice.

This Court granted certiorari in order to consider the Court of Appeals' ruling that a valid contractual merger clause did not foreclose a civil litigant's claim of theft by deception based upon misrepresentations allegedly made during pre-contractual negotiations. As explained below, we conclude that in an arm's length business transaction, pre-contractual representations are superceded by a valid contractual merger clause, and cannot form the basis of post-contractual claims of theft by deception, fraud, or misrepresentation. Therefore, we reverse.

In 1992, appellant First Data POS, Inc., formerly known as Microbilt Corporation ("First Data"), purchased COIN Banking Systems ("COIN"), a software development company, from appellees the Willis Group. The parties executed a Stock Purchase Agreement ("the Agreement") in which First Data agreed to pay appellees $2.5 million in exchange for all of COIN's stock. The Agreement provided that appellees might receive additional payments, so long as COIN's post-acquisition business generated certain levels of revenue over the three-year period following the Agreement's execution ("the earnout provision"). The Agreement expressly stated that First Data was under no obligation to carry on the current business of COIN, or even to maintain COIN as a business entity, but rather that First Data was authorized "at any time without limitation and without notice to [appellees to] reorganize or merge [COIN] out of existence or cease the sale of any of the products or services of [COIN]." Finally, the Agreement contained a standard merger clause, which stated that:

> [The] Agreement . . . constitutes the entire agreement between the parties with respect to the subject matter contained herein and supercedes all prior agreements and understandings, both oral and written by and between the parties hereto with respect to the subject matter hereof.

Approximately three years after the Agreement's execution, appellees filed suit alleging that during the pre-contractual negotiations, First Data had misrepresented its intention to increase COIN's business after it acquired the company, and that those misrepresentations had induced appellees to enter into the Agreement and to

sell COIN's stock for less than its then-current market value. Appellees' complaint against First Data alleged fraudulent misrepresentation, breach of contract, and violation of Georgia's Civil RICO Act. Appellees predicated their RICO count upon an allegation that First Data's purported misrepresentations had amounted to criminal theft by deception under OCGA § 16-8-3.[1]

The trial court granted summary judgment in favor of First Data on all three counts contained in appellees' complaint. The Court of Appeals affirmed the grant of summary judgment as to appellees' civil fraud and breach of contract counts.[2] However, the Court of Appeals reversed the trial court's grant of summary judgment as to appellees' civil RICO count, concluding that the trial court erred by ruling that the merger clause precluded appellees' claim that First Data's pre-contractual representations amounted to criminal theft by deception.

1. Theft by deception occurs when one "obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."[3] One commits deception when they (a) create or confirm another's impression that a fact or event is true when one knows such a fact or event is false; (b) knowingly fails to correct a false impression of a fact or event which one has previously created or confirmed; and (c) promises to perform services that one does not intend to perform or knows will not be performed.[4]

As explained above, in this matter, appellees based their RICO count upon allegations that First Data committed theft by deception when it made certain misrepresentations to appellees before the Agreement's execution. Appellees claim these alleged misrepresentations contained assurances that First Data would increase the size of COIN's business, thereby increasing post-contractual revenues produced by the business and entitling appellees to payments under the Agreement's earnout provision.

As pointed out by appellees in support of their claim, the Agreement does state that First Data "intends to increase COIN's operations throughout [a] Territory [identified in the Agreement]." However, this statement appears in the portion of the Agreement that

---

[1] Appellees also alleged that a "pattern of racketeering activity" was shown by First Data's purchase of a California business, Retail Interact, Inc. ("RI"). At the same time this present action was filed in the trial court, a lawsuit concerning the RI acquisition was pending in California district court. In the RI lawsuit also, the plaintiffs asserted fraud and contract breach against First Data. Summary judgment was awarded by the district court in favor of First Data, and in an unpublished opinion the Ninth Circuit Court of Appeals affirmed, applying Georgia law. *DeKellis v. Microbilt*, 1997 U.S. App. LEXIS 34868 (9th Cir. 1997).

[2] *Willis v. First Data POS*, 245 Ga. App. 121 (536 SE2d 198) (2000).

[3] OCGA § 16-8-3 (a).

[4] OCGA § 16-8-3 (b).

addresses the scope and reasonableness of the covenants not to compete contained therein, and does not appear to pertain to any obligation First Data might have undertaken with regard to COIN's post-contractual business operations.[5]

Moreover, the Agreement's terms state with absolute clarity that First Data was under no obligation to continue carrying on COIN's business and could, at any time and without notice to appellees, "reorganize or merge [COIN] out of existence or cease the sale of any of [COIN's] products or services." Despite this express contractual provision, appellees' claim is based entirely upon parol evidence of contradictory representations that are purported to have been made before the Agreement's execution. "It has long been the law of this State that the parol evidence rule prohibits the consideration of evidence of a prior or contemporaneous oral agreement to alter, vary or change the unambiguous terms of a written contract."[6] Therefore, the Court of Appeals erred by basing its ruling upon such contradictory parol evidence.

2. The Court of Appeals also erred by concluding that the Agreement's merger clause did not preclude appellees' claim that First Data's pre-contractual representations amounted to theft by deception. As explained above, the Agreement's unambiguous merger clause states that it was the parties' intention that the Agreement supercede all precontractual agreements and representations, both oral and written, concerning First Data's acquisition of COIN's stock.

It is axiomatic that contracts must be construed to give effect to the parties' intentions, which must whenever possible be determined from a construction of the contract as a whole.[7] Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning.[8] Where a conflict exists between oral and written representations, it has long been the law in Georgia that if the parties have reduced their agreement to writing, all oral representations made antecedent to execution of the written contract are merged into and extinguished by the contract and are not binding upon the parties.[9] In written contracts containing a merger clause,

---

[5] See notes 6, 7 and 8, infra, and accompanying text.

[6] *Sentry Engineering &c. v. American Olean Tile Co.*, 172 Ga. App. 769, 770 (324 SE2d 591) (1984); accord *Dolanson Co. v. C & S Nat. Bank*, 242 Ga. 681 (251 SE2d 274) (1978).

[7] OCGA § 13-2-2 (4); *Wiggins v. Southern Bell Tel. &c. Co.*, 245 Ga. 526 (266 SE2d 148) (1980); *McCann v. Glynn Lumber Co.*, 199 Ga. 669 (34 SE2d 839) (1945).

[8] *Baker v. Baker*, 257 Ga. 187 (356 SE2d 873) (1987); *Head v. Hook*, 248 Ga. 818 (285 SE2d 718) (1982); *Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299 (99 SE2d 95) (1957).

[9] *Cox v. Smith*, 244 Ga. 280 (260 SE2d 310) (1979); *White v. Rainwater*, 205 Ga. 219 (52 SE2d 838) (1949).

prior or contemporaneous representations that contradict the written contract "cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud."[10]

This Court has held that "the rational basis for [merger clauses] is that where parties enter into a final contract all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished."[11] As recently noted by the United States Court of Appeals for the Seventh Circuit, merger clauses exist in written contracts specifically to "preclude any claim of deceit by prior representations. . . . [A] person who has received written disclosure of the truth may not claim to rely on contrary oral falsehoods."[12] It is for this reason that our own Court of Appeals has recently held that a RICO count alleging theft by deception based upon pre-contractual representations is foreclosed by the written terms of a valid contractual merger clause.[13]

It follows from these well established precepts of contract law and the precedent based thereon that any impressions held by appellees that were based upon First Data's purported pre-contractual representations that it would increase COIN's business after the acquisition were superceded by the merger clause contained in the parties' Agreement, which expressly put appellees on notice that the Agreement's terms superceded any and all prior representations not contained therein.

Thus, appellees' claim that they were deceived by First Data's pre-contractual misrepresentations, and their allegation that First Data committed theft by such deception, have no basis. Under the express terms of the Agreement, appellees could not have reasonably placed their reliance upon any pre-contractual representation that was not also included in the Agreement's language,[14] and thus appellees could not have been deceived by such pre-contractual representations. Without deception, of course, there can be neither theft by deception nor a valid RICO claim based upon theft by deception.

Accordingly, for the reasons explained above, we conclude that

---

[10] *Campbell v. C & S Nat. Bank,* 202 Ga. App. 639 (415 SE2d 193) (1992).

[11] *Health Svc. Centers v. Boddy,* 257 Ga. 378, 380 (359 SE2d 659) (1987); *Alpha Kappa Psi Bldg. Corp. v. Kennedy,* 90 Ga. App. 587 (83 SE2d 580) (1954) (there cannot be justifiable reliance upon a pre-contractual representation when there is a merger clause in a contract).

[12] *Rissman v. Rissman,* 213 F3d 381, 383 (7th Cir. 2000).

[13] *Markowitz v. John Wieland Homes,* 243 Ga. App. 151 (532 SE2d 705) (2000). See *Simmons v. Wooten,* 241 Ga. 518 (246 SE2d 639) (1978) (affirming summary judgment on civil fraud claim based upon alleged oral misrepresentation that contradicted written contract).

[14] See *Daniel v. Conrad,* 242 Ga. 119, 120 (249 SE2d 603) (1978); *Markowitz,* supra; *Alpha Kappa Psi,* supra.

the Court of Appeals erred in ruling that the contractual merger clause did not preclude appellees' claim that First Data had committed criminal theft by deception in making pre-contractual representations regarding the future business operations of COIN Banking Systems.[15] As a matter of law, a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations. Therefore, this matter is reversed.

*Judgment reversed. All the Justices concur.*

DECIDED MAY 7, 2001.

*Sutherland, Asbill & Brennan, Thomas A. Cox, Kristen J. Indermark*, for appellant.

*King & Croft, F. Carlton King, Jr., Arnold J. Wolf*, for appellees.

*King & Spalding, L. Joseph Loveland*, amicus curiae.

---

[15] We also reject dicta in the Court of Appeals' opinion holding that a jury could infer that First Data had intended to deceive appellees, based upon the "illusion of contract terms requiring good faith, fair dealing and commitment of resources." 245 Ga. App. at 125. These terms are not included in the Agreement and, as explained above, the Agreement gives First Data authority to terminate COIN's operations altogether, if it so desires. The Court of Appeals also indicates its belief that First Data's actions could constitute federal mail or wire fraud, 245 Ga. App. at 126; however, neither of these crimes was alleged by appellees. Finally, the Court of Appeals held that the issues raised in the lawsuit surrounding the RI transaction, see n. 1, supra, might constitute a predicate act to establish a RICO claim. 245 Ga. App. at 127. However, the United States Court of Appeals for the Ninth Circuit affirmed summary judgment in favor of First Data in that matter by applying Georgia law. *DeKellis v. Microbilt*, supra.