## A03A1470. AUTHENTIC ARCHITECTURAL MILLWORKS, INC. v. SCM GROUP USA, INC.
### (586 SE2d 726)

BARNES, Judge.

Authentic Architectural Millworks, Inc. ("Authentic") appeals from the trial court's grant of partial summary judgment to SCM Group USA, Inc. ("SCM") on Authentic's counterclaim in this dispute arising out of the sale of a commercial grade woodworking router. For reasons that follow, we reverse in part and affirm in part.

The record shows that SCM sued Authentic in August 2000 for breach of contract based upon Authentic's failure to pay the full purchase price for the router. When it answered the complaint, Authentic also asserted a counterclaim alleging breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligent misrepresentation, fraud and deceit, and bad faith. In its negligent misrepresentation and fraud claims, Authentic asserted that SCM made false or negligent misrepresentations that induced it to purchase the router.

SCM subsequently moved for partial summary judgment on Authentic's counterclaims for negligent misrepresentation, fraud, and lost profits. In this motion, SCM contended that Authentic elected to affirm the contract and that its claims for fraud and misrepresentation were therefore barred by an alleged merger clause in its contract. SCM also asserted that it was entitled to partial summary judgment in its favor on the issue of lost profits for two reasons: (1) the contract expressly excluded the recovery of lost profits, and (2) Authentic's expected lost profits were too remote and speculative to be recoverable.

Five days after the motion for summary judgment was filed, Authentic amended its answer and asserted for the first time that it "lawfully revoked acceptance of the goods sold to Defendant and rescinded the contract between the parties." On the same day that it filed its opposition to the motion for summary judgment, Authentic amended its counterclaim to request for the first time in its prayer for relief that "the contract between the parties be rescinded."

The trial court granted SCM's partial summary judgment motion, finding that Authentic "affirmed the contract and is bound by the terms of it," that "lost profits or other special damages" were barred by the contract, and that "Authentic's claim for expected prof-

its is too uncertain, speculative and remote." Authentic appeals from this ruling.

1. The first issue that we must address in this appeal is whether Authentic affirmed or rescinded the contract.

> A purchaser claiming he was fraudulently induced to enter a sales contract has an election of remedies: (1) promptly after discovering the fraud he may rescind the contract and sue in tort for recovery of the purchase price and for any additional damages resulting from the alleged fraud; or (2) he may affirm the contract and sue for damages resulting from the fraud. This second suit, however, is not one for breach of contract, but one in tort. As these suits involve affirmance of the contract, the defrauded party may keep the benefits of the contract and still maintain an action for damages suffered because of the fraud. Although the action is in tort, it is based on the affirmance of the contract and seeks damages resulting from fraud arising from the contract. Because the allegedly defrauded party elected to affirm the contract, that party is bound by the contract's terms and is subject to any defenses which may be based on the contract. *Ben Farmer Realty Co. v. Woodard*, 212 Ga. App. 74, 75 (441 SE2d 421) [(1994)].

*Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522, 523-524 (1) (448 SE2d 271) (1994).

In this case, Authentic sought only money damages in its initial counterclaim and failed to seek rescission until after SCM filed the motion for partial summary judgment raising the issue of prompt rescission. Under these circumstances, we find that Authentic affirmed the contract. *Markowitz v. Wieland*, 243 Ga. App. 151, 153 (1) (532 SE2d 705) (2000) (finding plaintiff affirmed contract in complaint by seeking only money damages and failing to seek rescission, even if there were an attempted rescission before suit was filed). See also *Consulting Constr. Corp. v. Edwards*, 207 Ga. App. 296, 298 (1) (427 SE2d 789) (1993) (finding "appellants' attempt to rescind the contract in response to the appellee's motion for summary judgment was untimely").

2. Having found that Authentic affirmed the contract, we must now determine whether the merger clause alleged by SCM bars Authentic's fraud and negligent misrepresentation claims. See *Hightower*, 214 Ga. App. at 524 (2) ("same principles apply to both fraud and negligent misrepresentation cases").

> In an action for fraud, if the defrauded party has not rescinded but has elected to affirm the contract, he is rele-

gated to a recovery in contract and the merger clause will prevent his recovery. This result obtains because where the allegedly defrauded party affirms a contract which contains a merger or disclaimer provision and retains the benefits, he is estopped from asserting that he relied upon the other party's misrepresentation and his action for fraud must fail.

(Citations and punctuation omitted.) *American Demolition v. Hapeville Hotel Ltd. Partnership*, 202 Ga. App. 107, 108-109 (1) (413 SE2d 749) (1991). "Stated another way, the entire agreement clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." (Citations and punctuation omitted.) *Ainsworth v. Perreault*, 254 Ga. App. 470, 472 (1) (563 SE2d 135) (2002). Thus, if the contract contains a merger clause, a party cannot argue "they relied [upon] representations other than those contained in the contract." Id.

We find that the alleged merger clause does not bar Authentic's fraud and negligent misrepresentation claims for two reasons: (a) Authentic alleges that it relied upon representations that were in the contract, and (b) the contract does not include a merger clause.

(a) In its counterclaim, Authentic asserts that SCM represented that the router would "perform at a rate of 60m/min -2362 in./min; and not require manual lubrication throughout its useful life." It further alleges that the router "performed at a rate of only 40m/min. (versus 60 as represented)" and that "daily manual lubrication" was required. The written contract signed by both of the parties states under a heading titled "Advantages and Benefits": "Rapid feed speeds accelerate at 2,362 inches per minute" and "no manual lubrication needed throughout the lifetime of the machine." In a "Technical features" section of the contract it lists the "max. rapid speed" as "60m/min. (2,362 In./Min.)." Another "advantage and benefit" is listed as "Rapid feed speeds at 2,362 inches per minute due to the turning of the nut instead of screw."

Because the record shows that Authentic relied upon misrepresentations in the contract itself, no alleged merger clause can bar its fraud and misrepresentation claims. *Gaines v. Crompton & Knowles Corp.*, 190 Ga. App. 863, 866 (4) (C) (380 SE2d 498) (1989).

(b) We further find that Authentic's fraud and negligent misrepresentation claims are not precluded because the record fails to support SCM's claim that the contract included a merger clause.

On page five of its brief to this court, SCM asserts that the contract between the parties "contained a merger clause stating that representations not contained in the contract were not binding." In a footnote to this statement, SCM included the actual language of this alleged merger clause, but omitted the underlined heading for this

clause that identifies it as a "Limited Warranty" clause.[1] The clause that SCM characterizes as a merger clause follows:

> *Limited Warranty.* The only warranty given in connection with any Goods sold by [SCM] is its Limited Warranty to the ultimate purchaser/user provided in Section 3 of these Terms and Conditions of Sale, and no other representations or warranties of any kind shall be made or given by any distributor or agent thereof in connection with the sale of the Goods by such distributor to the ultimate purchaser/user.

In *First Data POS v. Willis*, 273 Ga. 792 (546 SE2d 781) (2001), our Supreme Court noted that the following language was a standard merger clause:

> The Agreement . . . constitutes the entire agreement between the parties with respect to the subject matter contained herein and supercedes all prior agreements and understandings, both oral and written by and between the parties hereto with respect to the subject matter hereof.

Further examples of merger clauses can be found in *Ainsworth*, supra, 254 Ga. App. at 472, and *Herman Homes, Inc. v. Smith*, 249 Ga. App. 131 (1) (547 SE2d 591) (2001).

After reviewing the clause relied upon by SCM, we find that it is not a merger clause. Nowhere in this clause are the words "representations not included in this contract [are] not binding" as asserted by SCM in its brief to this court. Instead, this clause prohibits distributors or agents from making "other representations or warranties of any kind" in the future with its "shall be" language. Additionally, the clause is titled "Limited Warranty," not "Merger" or "Entire Agreement." Cf. *Giles v. Nationwide Mut. Fire Ins. Co.*, 199 Ga. App. 483, 484 (1) (405 SE2d 112) (1991) (clause language must be read together with clause heading when construing contract).

3. Having determined that Authentic's fraud and negligent misrepresentation claims can proceed, we must now review the trial court's finding that the contract "bars recovery of lost profits or other special damages." The trial court's finding was based upon a "Limited Warranty" provision found on the reverse side of a document titled "Confirmation Customer Order" sent to Authentic by SCM four days after a written "Offer to Sell" the router had already been signed by

---

[1] SCM presented its characterization of the clause in its brief to the trial court in the same manner it has on appeal, i.e., the actual language can only be found in a footnote and the heading was omitted.

both of the parties. The Offer to Sell included all of the terms necessary for the formation of a contract and will be referred to as "the contract" in the remainder of this opinion.

The confirmation was never signed by Authentic, is internally inconsistent, and contradicts the contract that was signed by the parties. The contract signed by the parties states in a heading titled "WARRANTY":

> Full warranty included in price.
> — Two year warranty on electro-spindles.
> — Two year warranty on electrical and mechanical components.
> — Five year warranty on THK guides and ways.

The same "full warranty," "two year warranty," and "five year warranty" language that is quoted above was typed on the front side of the confirmation. The "limited warranty" relied upon by the trial court can only be found in the preprinted language on the reverse side of the confirmation. This limited warranty clause specifically excludes "incidental, special, consequential, and all other types of damages caused by defects in materials and workmanship in the Goods. . . ." It also states that: "[SCM] makes this warranty in lieu of any and all other warranties, express or implied, and [SCM] hereby expressly disclaims any and all implied warranties of merchantability or fitness for a particular purpose. . . ." It further states that the length of the limited warranty is one year, except for router spindler bearings which are sold " 'as is' " with no warranty, and all other bearings which have only a 180-day warranty. Finally, the purchaser's exclusive remedy under this clause is "[r]eplacement or repair of defective Goods."

SCM argued in its motion for partial summary judgment that "[t]ogether, the Offer to Sell and Confirmation constitute the contract between SCM and Authentic."[2] We disagree.

Georgia's Uniform Commercial Code provides:

> (1) Except as otherwise provided in this Code section a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is

---

[2] SCM makes the same assertion on appeal.

not enforceable under this paragraph beyond the quantity of goods shown in such writing. (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this Code section against such party unless written notice of objection to its contents is given within ten days after it is received.

OCGA § 11-2-201.

In this case, a contract between the parties was formed when both of them signed the Offer to Sell. See generally OCGA § 11-2-204. The "confirmation" that was created and sent by SCM four days later was not a confirmation of an oral contract that could be used to satisfy the Statute of Frauds under OCGA § 11-2-201 (2) and then as evidence of the terms to which the parties agreed under OCGA § 11-2-207 (2).[3] Instead, the confirmation, at most, operated as a modification of the existing contract between the parties. See generally OCGA § 11-2-209.

Assuming, without deciding, that the confirmation was a modification of the existing contract, we find that the preprinted "limited warranty" language on the back of the confirmation would have no effect because it directly contradicts the full warranty language that was typed on the front of the preprinted confirmation form. OCGA § 13-2-2 (7) ("When a contract is partly printed and partly written, the latter part is entitled to most consideration."); *Asian Square Partners v. Ly*, 238 Ga. App. 165, 167 (1) (518 SE2d 166) (1999) ("Because the contract is printed, the typewritten portions of the contract prevail over the printed language."). Because the preprinted "limited warranty" clause found on the back side of the confirmation has no effect, the trial court erred when it applied this provision to bar Authentic's claim for lost profits or other special damages.

4. The final portion of our analysis concerns whether the trial court properly concluded that the evidence with regard to Authentic's lost profits was too uncertain, speculative, and remote to allow a recovery as a matter of law.

Ordinarily, anticipated profits are too speculative to be recovered, "but where the business has been established,

---

[3] Official Comment 3 to UCC § 2-201 states that the "only effect" of a failure to answer a written confirmation of a contract within ten days "is to take away from the party who fails to answer the defense of the statute of frauds; [the] burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected." See also *Edwards v. Wilbur-Ellis Co.*, 379 FSupp. 1404, 1406 (N.D. Ga. 1974).

has made profits and there are definite, certain and reasonable data for their ascertainment, and such profits (were) in the contemplation of the parties at the time of the contract, they may be recovered . . . even though they can not be computed with exact mathematical certainty." *Mizell v. Spires*, 146 Ga. App. 330, 332 (2) (246 SE2d 385) (1978). Nonetheless, "to recover lost profits one must show the probable gain with great specificity as well as expenses incurred in realizing such profits. In short, the gross amount minus expenses equals the amount of recovery." *Kitchens v. Lowe*, 139 Ga. App. 526, 531 (228 SE2d 923) (1976). Further, the losses must be directly traceable to the acts of the other party. *Tri-State Systems v. Village Outlet Stores*, 135 Ga. App. 81, 84 (2) (217 SE2d 399) (1975).

*Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107, 108-109 (2) (395 SE2d 592) (1990).

While the record contains evidence creating an issue of fact as to whether Authentic experienced lost *gross* profits as a result of operating problems with the router, Authentic submitted no evidence from which its lost *net* profits could be calculated. As a result, we must affirm the trial court's grant of partial summary judgment to SCM on the issue of lost profits. *Shaw v. Ruiz*, 207 Ga. App. 299, 304 (11) (428 SE2d 98) (1993) (lost profits could not be recovered because there was no evidence from which net profits could be calculated); *Empire Shoe Co. v. NICO Indus.*, 197 Ga. App. 411, 414 (2) (398 SE2d 440) (1990) (gross profits cannot be used as basis for recovery of damages for lost profits).

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Adams, J., concur.*

DECIDED AUGUST 20, 2003.

*Richard S. Alembik*, for appellant.
*Meadows, Ichter & Trigg, Thomas J. Archer*, for appellee.