**WERNER ENTERPRISES, INC., Plaintiff,**

v.

**MARKEL AMERICAN INSURANCE COMPANY and INVESTORS UN-DERWRITING MANAGERS, INC., Defendants.**

No. 1:04 CV 1718 TCB.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 15, 2006.

David H. Pope, Carr Tabb & Pope, Atlanta, GA, Dennis J. Artese, John B. Berringer, Anderson Kill & Olick, New York, NY, for Plaintiff.

Corliss Lawson, Michael A. Hession, Paul T. Kim, Lord Bissell & Brook, Thomas J. Strueber, McKenna, Long & Aldridge, Atlanta, GA, for Defendants.

## ORDER

BATTEN, District Judge.

### I. Background

This case involves a dispute between an insurer and its insured over the enforceability of an alleged agreement by the insurer to provide a policy of insurance for three years at a fixed annual rate.

The insured is Plaintiff Werner Enterprises, Inc., a commercial trucking company.

The insurer is Defendant Markel American Insurance Company. Defendant Investors Underwriting Managers, Inc. ("IUM") is a wholly owned subsidiary of Markel and operates as Markel's underwriting manager for certain types of liabilities, including liabilities associated with the commercial trucking industry.

In 2000, Werner employed a full-time risk manager who helped purchase a number of Werner's insurance policies. Werner also contracted with professional insurance brokers, including Lockton Companies and Heath Insurance Brokers, Inc., for assistance in obtaining such insurance.

Beginning in or about June 2000, Lockton and Heath entered into negotiations with IUM to obtain an umbrella policy for Werner. These negotiations culminated in Markel's issuance of an umbrella policy covering the period of August 1, 2000 to August 1, 2001.

On July 11, 2000, during the course of the negotiations, a letter was sent by an agent of IUM to an individual at Heath, stating:

> We are in agreement to provide a rate of .0940 per 100 miles for the period of August 1, 2000 through August 1, 2003 with a Minimum & Deposit of $987,800 for the captioned account.
>
> This rate will not change unless:

1) There is a material change in operation
2) An incurred loss pierces our point of attachment
3) The underlying carrier, limits, coverages and rates change

On July 20, 2000, IUM issued a three-page binder for the policy. The binder reflected that the policy term was one year, from August 1, 2000 to August 1, 2001, and that the premium was $987,800, adjustable at a rate of .0940 per 100 payroll miles.

The bottom of the first page of the binder contains the following language in bold typeface: "Please refer to our policy form and endorsement(s) for a complete listing of all the terms, conditions, limitations and exclusions."

The bottom of the second page of the binder contains the following language in bold typeface: "Please review this quote carefully. The terms and conditions may differ from the terms and/or conditions originally requested."

The binder does not reference or discuss the July 11 letter. Nor does it contain any language indicating that the premium rate would be applicable to any renewal of the policy beyond the initial, one-year term.

On September 5, 2000, IUM forwarded the policy to Heath. The policy contains the following language:

- This policy contains all the agreements between you and us concerning this insurance.
- [Markel] may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least ... Ninety (90) days before the effective date of cancellation if we cancel for any ... reason [other than bankruptcy or non-payment of premiums].
- We may non-renew this policy by mailing to the first Named Insured written

notice of the non-renewal at least 60 days before the expiration date of the policy.

On February 23, 2001, Werner inquired, through one of its brokers, whether Defendants would "commit to the same rate" for 2001–2002. On May 10, 2001, Werner asked again, through its brokers, whether Defendants would be "honoring" the July 11, 2000 letter.

On May 23, 2001, Defendants advised that they were not renewing the 2000–2001 policy, and pursuant to the non-renewal provision of the policy, sent Werner a Notice of Non–Renewal of Insurance, stating, "We are willing to consider renewal options for this account. However, any renewal option we may offer may contain changes in limits, premiums, terms, and conditions. If you wish to proceed on this basis, please forward completed signed, dated renewal submission including all pertinent information."

Werner, through Lockton, engaged in negotiations with Defendants for a new policy for the August 2001—August 2002 period and ultimately bought a policy for that period with different terms of coverage and different exclusions from the 2000–2001 policy. The new policy's premium rate was also higher than the premium rate for the 2000–2001 policy. The new policy contained the same entire agreement clause and provisions setting forth Markel's right to cancel and non-renew as the earlier policy.

As with the 2000–2001 policy, on or about May 16, 2002, Markel sent Werner a notice of non-renewal of the 2001–2002 policy.

More than two years later, on June 15, 2004, Werner filed this suit, asserting claims for breach of contract, fraudulent inducement, and negligent misrepresentation in connection with the representation in the July 11, 2000 letter that IUM would provide Werner coverage at a fixed premium rate for a period of three consecutive years, from August 1, 2000 through August 1, 2003. Werner seeks to recover the costs it allegedly incurred in obtaining replacement insurance coverage during the second and third years of that three-year period.

The essence of Defendants' position is that the July 11 letter is not a contract and is not part of the policy. Defendants also assert a counterclaim against Werner, alleging fraudulent misrepresentation and negligent misrepresentation in connection with Werner's alleged failure to provide certain prior loss and claim information during the negotiations for the 2001–2002 policy. Specifically, Defendants contend that Werner failed to disclose a claim related to an automobile accident that took place on August 1, 2000.

The parties have each filed motions for summary judgment on the claims asserted against them.

## II. Discussion

### A. Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts

showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the Court must determine "whether a fair-minded jury could return a verdict for the Werner on the evidence presented." *Id.*

## B. Defendants' Motion for Summary Judgment

### 1. Werner's Breach of Contract Claim

■ Defendants argue that the 2000–2001 policy's entire agreement clause extinguishes all prior negotiations between the parties, including any representations that were made in the July 11 letter. The policy's entire agreement clause states: "This policy contains all the agreements between you and us concerning this insurance."

■ The Georgia Supreme Court has explained that in "written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties . . . ." *First Data POS, Inc. v. Willis,* 273 Ga. 792, 795, 546 S.E.2d 781, 784 (2001). "The purpose of a merger clause is to preclude any unilateral modification of a written contract through evidence of pre-existing terms which were not incorporated therein." *Thomas v. Garrett,* 265 Ga. 395, 396, 456 S.E.2d 573, 575 (1995); *see also Schlange–Schoeningen v. Parrish,* 767 F.2d 788, 792 (11th Cir. 1985) ("a 'merger clause' is in reality merely a contractual reaffirmance of the parol evidence rule," which bars evidence of a previous or contemporaneous agreement

that attempts to vary the terms of a contract). Accordingly, when a merger clause is in place, "all prior negotiations, understandings, and agreements on the same subject are merged into the final contract, and are accordingly extinguished." *First Data POS, Inc.,* 273 Ga. at 795, 546 S.E.2d at 784.

Here, all of the negotiations concerning the possibility of a three-year rate guarantee, including the July 11 letter, occurred prior to the issuance of the 2000–2001 policy. Neither the 2000–2001 policy binder nor the policy itself makes any reference to a three-year rate guarantee. As quoted above, the policy contained an explicit merger clause, and the binder that was issued to Werner on July 20, 2000 stated in bold typeface that "[t]he terms and conditions may differ from the terms and/or conditions originally requested." Thus, Defendants argue that any representation regarding a three-rate guarantee, either in the July 11 letter or elsewhere, is extinguished by the 2000–2001 policy.

Werner acknowledges that the merger clause was part of the 2000–2001 policy and concedes that it is a typical clause in the insurance policies that Werner has executed. In an attempt to circumvent the merger clause, Werner argues that the July 11 letter constitutes a separate contract for a three-year rate guarantee. Werner cites to *Ind. Truck Corp. v. Glock,* 46 Ga.App. 519, 168 S.E. 124 (1933), where the Georgia Court of Appeals held that a merger clause does not necessarily extinguish a collateral agreement that is not inconsistent with the terms of the final agreement.

However, the July 11 letter *is* inconsistent with the terms of the 2001–2001 policy. The policy is for a one-year term and contains unambiguous cancellation and non-renewal provisions. Specifically, the 2000–2001 policy states that: "we may can-

cel this policy by mailing or delivering to [Werner] written notice of cancellation at least ... ninety (90) days before the effective date of cancellation" and "we may non-renew this policy by mailing to [Werner] written notice of the non-renewal at least 60 days before the expiration date of the policy." Accordingly, the policy contemplates a one-year term or less, with no guarantee of renewal.

By contrast, the July 11 letter sets forth a three-year rate guarantee and promises that the rate will not change unless: (1) there is a material change in operation; (2) an incurred loss pierces Defendants' point of attachment; or (3) the underlying carrier, limits, coverages and rates change. Thus, the July 11 letter contemplates a three-year policy period accompanied by a three-year rate guarantee. Accordingly, the Court rejects Werner's argument that the July 11 letter is a collateral agreement that complements, rather than contradicts, the 2000–2001 policy.

■ Alternatively, Defendants argue that even if the July 11 letter is not extinguished by the merger clause, Werner's reliance on the letter fails for another reason—it fails to constitute an enforceable contract. The Court agrees.

■ In support of this argument, Defendants invoke the statute of frauds, explaining that an agreement such as the July 11 letter that is not to be performed within one year falls within the statute. *See* O.C.G.A. § 13–5–30(5). Importantly, if an agreement falls within the statute of frauds, it must be "complete within itself" as to "all terms of the undertaking," and parol evidence cannot be used to supply contractual elements that are missing. *Gatins v. NCR Corp.*, 180 Ga.App. 595, 596–97, 349 S.E.2d 818, 819–20 (1986). Noncompliance with the statute of frauds renders the contract unenforceable. *See Utica Tool Co. v. Mitchell*, 135 Ga.App. 635, 636, 218 S.E.2d 650, 652 (1975).

Werner argues that the July 11 letter does not fall within the statute of frauds because it is capable of being performed within one year. Werner points out that the letter contemplates that the rate could change if one of the three enumerated events occurred. According to Werner, a rate change is the functional equivalent of a cancellation of the policy, and therefore the July 11 agreement to provide coverage for a term of three years at a guaranteed rate could be terminated in less than one year.

The Court rejects Werner's argument because it is foreclosed by the Eleventh Circuit's reasoning in *All Brand Importers, Inc. v. Tampa Crown Distributors, Inc.*, 864 F.2d 748, 751 (11th Cir.1989):

> The allegation that the contract was terminable for cause does not remove the contract from the statute. Such a contingency applies to any contract, and to permit a contingency of early termination to remove [a contract] from the statute of frauds would rob the statute of its force.

■ Werner also argues that the part-performance exception to the statute of frauds applies. "Where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance," an agreement does not fall within the statute. O.C.G.A. § 13–5–31(3). Werner contends that its purchase of insurance from Defendants constitutes sufficient evidence of part performance to remove the July 11 letter from the reach of the statute of frauds.

■ The Court rejects Werner's argument because the part performance exception applies only where the actions alleged to be part performance are consistent with the presence of a contract. *Studdard v. George D. Warthen Bank*, 207 Ga.App. 80, 80, 427 S.E.2d 58, 59 (1993). Here, Wer-

ner's purchase of another policy from Defendants for the 2001–2002 period with a different premium and rate than stated in the July 11 letter is inconsistent with the existence of a contract for a three-year rate guarantee.

For these reasons, the Court concludes that the July 11 letter falls within the statute of frauds and therefore, to be enforceable, must be complete within itself as to all terms of the undertaking. *See Gatins,* 180 Ga.App. at 596–97, 349 S.E.2d at 819–20.

■ Defendants argue that the July 11 letter is not complete within itself because it lacks essential terms, including the absence of any consideration for a three-year rate guarantee. The Court agrees.

■ No contract exists unless all essential terms have been agreed to, and the failure to agree to even one essential term means there is no agreement to be enforced. *See* O.C.G.A. 13-3-1. And, as the party seeking to enforce a purported contract, Werner bears the burden of proof as to all of the essential elements of the contract. *See, e.g., TransSouth Fin. Corp. v. Rooks,* 269 Ga.App. 321, 324, 604 S.E.2d 562, 564 (2004).

■ "It is fundamental contract law that consideration is essential to a contract which the law will enforce." *Newport Timber Corp. v. Floyd,* 247 Ga. 535, 540, 277 S.E.2d 646, 650 (1981). Most importantly, a contract falling within the statute of frauds must expressly name the consideration and not leave that element for identification by parol evidence. *See Pettigrew v. Collins,* 246 Ga.App. 207, 207–08, 539 S.E.2d 214, 215 (2000); *Powell v. Adderholdt,* 230 Ga. 211, 212, 196 S.E.2d 420, 421 (1973); *see also Robles v. Humana Hosp. Cartersville,* 785 F.Supp. 989, 1001 (N.D.Ga.1992) (consideration must be stated in the contract or be ascertainable from the contract).

The July 11 letter is silent regarding the consideration for a three-year rate guarantee. The only consideration in the letter is the premium amount of $987,800, which Werner concedes furnished only the consideration for the issuance of the policy covering the first year in question, August 2000—August 2001. Thus, according to the terms of the letter, Werner fulfilled its obligation to pay the agreed premium for the 2000–2001 policy but provided no separate consideration for a three-year rate guarantee.

Werner argues that the consideration for the three-year guarantee was its promise to purchase the 2000–2001 policy from Defendant rather than from another insurance company. However, that argument is unsupported by the terms of the letter, which as previously explained is entirely silent with regard to consideration for a three-year rate guarantee. Notably, Werner admits that it did not have any obligation to purchase insurance from Defendants for the 2001–2002 period and paid Defendants no more than the premium for the underlying 2000–2001 policy.

For all of these reasons, the Court finds that any promise by Markel or IUM of a three-year rate guarantee in the July 11 letter is unenforceable. Therefore, summary judgment in favor of Defendants is proper on Werner's breach of contract claim.

■ Finally, the Court notes that Werner also seeks to reform the 2000–2001 policy to reflect the true intention of the parties, which Werner argues was an agreement for a three-year guaranteed premium rate and three-year policy in accordance with the July 11 letter.

The Georgia Supreme Court has instructed that a court's power to reform a contract based upon mistake, mutual or unilateral, "shall be exercised with caution, and to justify it the evidence shall be clear, unequivocal, and decisive as to the mis-

take." *Tidwell v. Bassett,* 271 Ga.App. 867, 868–69, 611 S.E.2d 123, 125 (2005).

The Court rejects Werner's request to reform the policy because there is no "clear, unequivocal, and decisive" evidence of a mistake. The policy contains cancellation, non-renewal, and entire agreement provisions that Werner knew were in effect at all relevant times.

## 2. Werner's Fraudulent Inducement and Negligent Misrepresentation Claims

The Court has already concluded that as a matter of law any purported promise of a three-year rate guarantee in the July 11 letter is unenforceable. Accordingly, summary judgment is also proper on Werner's fraudulent inducement and negligent misrepresentation claims because both claims require Werner to demonstrate "justifiable reliance," [1] something Werner cannot do because the representation at issue was legally unenforceable at the time it was made. *See Hodge Residential, Inc. v. Bankers First Fed. Sav. & Loan Ass'n,* 199 Ga.App. 474, 475, 405 S.E.2d 302, 305 (1991) (there can be no justifiable reliance on a promise that is unenforceable); *see also Willis v. Rabun County Bank,* 161 Ga.App. 151, 153, 291 S.E.2d 52, 54 (1982) (affirming grant of summary judgment to defendant on fraud claim because purported promise was "wholly without consideration"); *Beasley v. Ponder,* 143 Ga.App. 810, 240 S.E.2d 111 (1977) (fraudulent inducement claim cannot be based on a document unenforceable for lack of material terms).

▇▇▇▇ Werner argues that "Georgia law on fraud provides only that the promise relied upon not be 'illegal,' not that it be 'enforceable.'" As the cases above make clear, Werner misstates the law on this issue. Indeed, *White v. I.T.T.,* 718 F.2d 994, 997 (11th Cir.1983), the authority upon which Werner relies, confirms that a fraud claim cannot be based on an unenforceable promise.

▇▇▇▇ In any event, Werner's fraud and negligent misrepresentation claims fail because of the policy's merger clause. "If the defrauded party has not rescinded but has elected to affirm the contract, he is relegated to a recovery in contract and the merger clause will prevent his recovery." *Potomac Leasing Co. v. Thrasher,* 181 Ga. App. 883, 886, 354 S.E.2d 210, 213 (1987); *see also Authentic Architectural Millworks, Inc. v. SCM Group USA, Inc.,* 262 Ga.App. 826, 827, 586 S.E.2d 726, 729 (2003) (merger clause may bar both fraud and negligent misrepresentation claims); *First Data POS, Inc. v. Willis,* 273 Ga. 792, 795, 546 S.E.2d 781, 785 (2001) ("a valid merger clause executed by two or more parties in an arm's length transaction precludes any subsequent claim of deceit based upon pre-contractual representations").

It is undisputed that Werner did not rescind the 2000–2001 policy. Thus, the merger clause bars Werner's fraud and negligent misrepresentation claims.

## C. Werner's Motion for Partial Summary Judgment

Werner moves for summary judgment on Defendants' counterclaims for fraudulent misrepresentation and negligent misrepresentation in connection with Werner's alleged failure to provide certain prior loss and claim information during the negotiations for the 2001–2002 policy.

---

1. *See, e.g., Meyer v. Waite,* 270 Ga.App. 255, 257–58, 606 S.E.2d 16, 20 (2004) (elements of fraud claim); *Newitt v. First Union Nat'l Bank,* 270 Ga.App. 538, 546, 607 S.E.2d 188, 196 (2004) (elements of negligent misrepresentation claim); *see also Hightower v. Century 21 Farish Realty,* 214 Ga.App. 522, 524, 448 S.E.2d 271, 273 (1994) (same principles apply to fraud and negligent misrepresentation claims).

For the reasons stated in Werner's memoranda of law in support of its motion for partial summary judgment, the Court grants Werner's motion. Specifically, Defendants have failed to proffer admissible evidence of ascertainable damages to support their counterclaims. *See Stiefel v. Schick*, 260 Ga. 638, 639, 398 S.E.2d 194 (1990) (" '[T]o establish a cause of action for fraud, a [party] must show that actual damages ... flowed from the fraud alleged' "); *Poe v. Sears, Roebuck & Co.*, 1 F.Supp.2d 1472, 1477 (N.D.Ga.1998) (to recover for negligent misrepresentation under Georgia law, the Werner must show that he suffered a pecuniary loss). Accordingly, Defendants' counterclaims cannot withstand summary judgment.

## III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion for summary judgment [62], **GRANTS** Plaintiff's motion for partial summary judgment [61], and **GRANTS** Werner's motion for leave to file an opposition brief in excess of twenty-five pages [71]. The **CLERK is DIRECTED** to close this case.