# FILED

**NOT FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: UNITED PARCEL SERVICE "AIR-IN-GROUND" MARKETING AND SALES PRACTICES LITIGATION, | No. 16-55918 |
| ------------------------------ | D.C. No. 2:10-ml-02153-GW-PJW |
| POCINO FOODS COMPANY; ARAPAHOE HYUNDAI, LLC; OWENS FINANCIAL GROUP, INC.; DESIGNER IMPORTS INTERNATIONAL, INC., | MEMORANDUM* |
| Plaintiffs-Appellants, | |
| v. | |
| UNITED PARCEL SERVICE, INC., Delaware, DBA United Parcel Service Co. (Air); UNITED PARCEL SERVICE GENERAL SERVICES CO., a Delaware corporation; UNITED PARCEL SERVICE COMPANY, a Delaware corporation, DBA United Parcel Service Co. (Air), | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

George H. Wu, District Judge, Presiding

Argued and Submitted April 9, 2019
Pasadena, California

Before: GRABER and BYBEE, Circuit Judges, and ARTERTON,[**] District Judge.

Plaintiffs shipped packages relatively short distances via "Next Day Air" and "2nd Day Air," two services offered by defendants United Parcel Service and its affiliates (collectively "UPS"). According to plaintiffs, UPS transported their "Air" packages by truck instead of airplane and imposed a fuel surcharge on those shipments derived from indexed prices of jet fuel instead of diesel fuel. Plaintiffs filed this lawsuit claiming that UPS breached the shipping contracts, breached the implied covenant of good faith and fair dealing, and committed mail and wire fraud for purposes of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*

The district court determined that, with respect to plaintiffs' state-law claims, California law governs the claims brought by plaintiffs Pocino Foods Company and Designer Imports International, Inc.; Colorado law governs the claims brought by plaintiff Arapahoe Hyundai, LLC; and Georgia law governs the

---

[**] The Honorable Janet Bond Arterton, United States District Judge for the District of Connecticut, sitting by designation.

2

claims brought by plaintiff Owens Financial Group, Inc.  The district court then granted UPS's motion to dismiss, and plaintiffs appeal.  Reviewing de novo, *see Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012), we affirm.

1.      The district court correctly dismissed plaintiffs' claims that UPS breached the shipping contracts by transporting their "Air" packages by truck instead of airplane.  These claims rest on the premise that the word "Air" in UPS's trademarked service names was a contractual promise by UPS to use airplane transportation.

But "clear and explicit" contractual language "governs," *State v. Cont'l Ins. Co.*, 281 P.3d 1000, 1004 (Cal. 2012) (citation omitted); *accord Pinnacol Assurance v. Hoff*, 375 P.3d 1214, 1222 (Colo. 2016); *First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. 2001), and in this case the governing contracts clearly and explicitly permitted UPS to transport plaintiffs' "Air" packages by truck.  From 1995 until 2001, the contracts provided that "[s]ome air shipments may be shipped by surface transportation."  In 2000 and 2001, the contracts also provided that "UPS will determine, in its sole discretion, the mode(s) of transportation for packages shipped via [Next Day and 2nd Day] Services" and that those packages "may be shipped by air or surface transportation, or both, at UPS's

3

sole discretion." And from 2002 to the present, the contracts provided that "UPS reserves the right in its sole discretion to use any mode of transportation whatsoever to provide the services selected by the shipper."

Plaintiffs try to inject ambiguity into these clear contract provisions based on the word "Air" in UPS's service names, asserting that "Air" services "plainly referred to 'air transport.'" This interpretation conflates UPS's "services" with modes of "transportation" despite the above-quoted contract provisions distinguishing these two concepts. Plaintiffs cannot override the clear contract terms by relying on their "subjective understanding" of the single word "Air," isolated from its context as part of a service name. *FDIC v. Fisher*, 292 P.3d 934, 937–38 (Colo. 2013); *accord Cont'l Ins.*, 281 P.3d at 1004; *First Data*, 546 S.E.2d at 784.

Because we conclude that these breach-of-contract claims fail on the merits, we need not reach the district court's alternative conclusion that some of the claims are barred by the applicable statutes of limitations.

2. The district court correctly dismissed plaintiffs' claims that UPS breached the shipping contracts by imposing on their truck-transported "Air" packages a fuel surcharge derived from indexed prices of jet fuel instead of diesel fuel. Plaintiffs' interpretation finds no support in the shipping contracts, which

4

expressly authorized UPS to apply a "fuel surcharge" to "such services and for such periods as UPS, in its sole discretion, may determine necessary." The contracts do not in any way limit UPS's "sole discretion" to use only certain fuel indexes, and the contracts plainly link the fuel surcharges to UPS's service levels, not to particular modes of transportation. Indeed, the fuel-surcharge contract provisions also directed plaintiffs to UPS's website, which disclosed the fuel surcharges applicable to UPS's various "services" and explained that the fuel surcharge applicable to "Air" services was based on a jet-fuel price index. Although plaintiffs suggest that UPS's website is too "massive" to find this disclosure, that suggestion flatly contradicts the allegation in plaintiffs' complaint that "shippers who search for information about the UPS fuel surcharge on the UPS website are 'sent' to this disclosure."

3.    The district court correctly dismissed plaintiffs' claims for breach of the implied covenant of good faith and fair dealing. These claims rest on UPS's decision to transport plaintiffs' "Air" packages by truck and to then charge "Air" prices and a fuel surcharge based on indexed jet-fuel prices.

Although the implied covenant requires a party holding "discretionary power" under a contract to exercise that discretion according to the "reasonable expectations of the parties," the implied covenant cannot "vary express terms" of

5

the contract. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 727–28 (Cal. 1992); *accord Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1996); *Automatic Sprinkler Corp. of Am. v. Anderson*, 257 S.E.2d 283, 284 (Ga. 1979). Here, the shipping contracts expressly gave UPS the "discretion to use any mode of transportation whatsoever" in transporting plaintiffs' packages, and the implied covenant does not override that express language. Moreover, plaintiffs have not plausibly alleged that UPS had discretion over pricing, and the shipping contracts plainly link shipping prices to service levels, not to modes of transportation.

Because we conclude that plaintiffs' implied-covenant claims fail on the merits, we need not reach the district court's alternative conclusion that they are preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c)(1), and *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 285–88 (2014).

4. The district court correctly dismissed Arapahoe's RICO claims, which are predicated on allegations of mail and wire fraud, 18 U.S.C. §§ 1341, 1343, because Arapahoe has failed to adequately allege "a scheme to defraud," *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). A "scheme to defraud" is a "scheme to deprive another of money or property by

means of false or fraudulent pretenses, representations, or promises," *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir.), *cert. denied*, 138 S. Ct. 409 (2017) (citation omitted), which can come in the form of "affirmative, material misrepresentation[s]," *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986), or "deceitful statements of half truths or the concealment of material facts," *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003) (citation omitted).

Arapahoe asserts that UPS affirmatively misrepresented that it would transport Arapahoe's "Air" packages by airplane and charge a diesel fuel surcharge. This claim is premised entirely on UPS's use of the word "Air" in the service name, and it fails for the same reasons as the breach-of-contract claims—the word "Air" was not an affirmative representation that UPS would use a particular mode of transportation or impose a particular fuel surcharge.

Arapahoe also contends that UPS's use of the word "Air" in the service name constituted a misleading "half-truth" because it led customers to believe "that they would receive *something* beyond Ground service in return for purchasing premium Air service, while concealing that they would receive *nothing* additional." This argument once again conflates UPS's service levels with modes of transportation; the fact that Arapahoe's "Next Day Air" packages were transported by truck does not mean that Arapahoe received "Ground" service.

7

**AFFIRMED.**