In the Supreme Court of Georgia

Decided:   November 17, 2014

S13G1826. RAYSONI v. PAYLESS AUTO DEALS, LLC et al.

BLACKWELL, Justice.

To make out a claim at common law for fraud, a plaintiff must show not only that he relied upon some misrepresentation, but he must show as well that his reliance was reasonable.[1] See Brown v. Techdata Corp., 238 Ga. 622, 624-625 (234 SE2d 787) (1977). The same is true of a claim under the Fair Business Practices Act of 1975, OCGA § 10-1-390 et seq., for consumer fraud.[2] See Tiismann v. Linda Martin Homes Corp., 281 Ga. 137, 138-139 (1) (637 SE2d

---

[1] Some of our cases refer to "reasonable" reliance, see, e.g., Brown v. Techdata Corp., 238 Ga. 622, 625 (234 SE2d 787) (1977), and others refer to "justifiable" reliance. See, e.g., Novare Group v. Sarif, 290 Ga. 186, 190 (3) (718 SE2d 304) (2011). We discern no meaningful difference between the two terms — at least as they have been used in this particular context — and we understand them to reflect the same idea.

[2] In Tiismann v. Linda Martin Homes Corp., 281 Ga. 137 (637 SE2d 14) (2006), this Court noted that a claim under the Fair Business Practices Act for consumer fraud requires proof of causation, see OCGA § 10-1-399 (a), and we held that proof of causation requires a showing of reasonable reliance. 281 Ga. at 141 (2) ("When the alleged FBPA violation is a misrepresentation, the consumer must show that he exercised due diligence to ascertain the falsity of the statement. Otherwise, the cause of the injury is the consumer's lack of proper diligence, rather than the alleged FBPA violation.").

14) (2006). In this case, Subodh Raysoni asserts such claims against Payless Auto Deals, LLC,[3] alleging that Payless gave false assurances that a used minivan never had been in a collision or otherwise damaged, assurances upon which he relied, he says, when he purchased the minivan from Payless. Contending that the terms of their written contract rendered any such reliance unreasonable as a matter of law, Payless moved for judgment on the pleadings. The trial court granted that motion, and in Raysoni v. Payless Auto Deals, LLC, 323 Ga. App. 583 (753 SE2d 313) (2013), the Court of Appeals affirmed. We granted a writ of certiorari to review the decision of the Court of Appeals, and we now reverse.

Whether it was reasonable for one to rely upon a certain misrepresentation is generally a question for a jury, see Akins v. Couch, 271 Ga. 276, 278 (3) (518 SE2d 674) (1999), although in some cases, the answer may appear so clearly that the question can be decided by a court as a matter of law. See Novare Group v. Sarif, 290 Ga. 186, 190 (3) (718 SE2d 304) (2011). For instance, when one has entered a contract with a binding and comprehensive merger clause, any

---

[3] Raysoni sued not only Payless, but also Ahsan Ul-Haque, a Payless salesperson with whom Raysoni dealt. Both Payless and Ul-Haque are parties to this appeal, but there is no need for us to distinguish between them. We refer to both simply as "Payless."

reliance upon precontractual representations is, generally speaking, unreasonable as a matter of law. See First Data POS, Inc. v. Willis, 273 Ga. 792, 796 (2) (546 SE2d 781) (2001). Likewise, when one is bound by a contract that includes terms that expressly, conspicuously, unambiguously, and squarely contradict precontractual representations, any reliance upon those precontractual representations may be deemed unreasonable as a matter of law. See Novare Group, 290 Ga. at 189-190 (2).

According to his complaint,[4] Raysoni visited the Payless car lot in September 2011, seeking to purchase "a reliable and durable automobile." Eventually, Raysoni became interested in a 2008 Honda Odyssey minivan, and he asked a Payless salesperson if it "had anything wrong with it, such as a prior wreck or damage." The salesperson responded that "nothing was wrong with the [minivan]" and that it was "clean" and "undamaged." To verify these representations, Raysoni asked the salesperson for a Carfax report, and Payless provided one. The Carfax report showed no damage to the minivan and no

---

[4] This case comes to us on the grant of a motion for judgment on the pleadings. See OCGA § 9-11-12 (c). As the Court of Appeals noted below, we accordingly must view the pleadings in the light most favorable to Raysoni (the nonmoving party), and we must accept the truth of the facts that he alleged in his complaint. See Raysoni, 323 Ga. App. at 583-584.

indication that it had been involved in any wreck. Relying on the representations of the salesperson and the Carfax report provided by Payless, Raysoni purchased the minivan. About two months later, Raysoni learned that the minivan, in fact, had been in a wreck and had sustained frame damage as a result. Raysoni attempted to return the minivan to Payless and rescind his purchase, but Payless refused. In his lawsuit, Raysoni contends that Payless knew at the time of his purchase that the minivan had been wrecked and had sustained substantial damage, that it intentionally misled him about the condition of the vehicle, and that it purposefully used an inaccurate Carfax report to further mislead him.

Even accepting these facts, Payless contends, Raysoni could not have reasonably relied on the representations of its salesperson or the Carfax report, and in support of this contention, Payless relies on several terms of its contract with Raysoni. First, Payless relies on a contractual provision that bears some resemblance to a merger clause, but the scope of that provision is not comprehensive. In its fine print, the contract says that "NO SALESMAN VERBAL REPRESENTATION IS BINDING ON THE COMPANY." Even if this provision amounts to a merger clause of sorts, it is only a partial merger clause, one limited to "verbal" representations. Here, Raysoni claims to have

4

relied not only on the verbal representations of the Payless salesperson, but also on a writing — the Carfax report — that was given to him by Payless. Accordingly, this is not a case in which reliance on all precontractual representations was rendered unreasonable as a matter of law by a comprehensive merger clause. Cf. First Data, 273 Ga. at 795.

Payless relies as well on several provisions of the contract disclaiming warranties, but again, its reliance is misplaced because these disclaimers are not absolute and unequivocal enough to warrant judgment on the pleadings. The more prominent and general disclaimer of warranties — a provision that the minivan was sold "AS IS NO WARRANTY" — is followed immediately by an explanation that arguably qualifies and limits that disclaimer: "The dealership assumes no responsibility for any repairs regardless of any oral statements about the vehicle." Likewise, the additional disclaimers of specific warranties that appear in the fine print of the contract are followed by the provision that "NO SALESMAN VERBAL REPRESENTATION IS BINDING ON THE COMPANY," and to the extent that the latter provision can be understood as an explanation of the foregoing disclaimers, it limits those disclaimers. Again, if Raysoni claimed only to have relied upon "oral" or "verbal" misrepresentations

5

by a Payless salesperson, these provisions might be a problem for him. But he claims as well to have relied upon a writing provided to him by Payless, the Carfax report. Moreover, notwithstanding the several disclaimers of warranties, the contract provides in another place — a provision that appears to have been added as a "comment" to the form contract — that Payless was, in fact, warranting the CV joints for thirty days. At the least, this provision shows that the disclaimers of warranties are not quite as absolute as Payless claims. We cannot say as a matter of law that the contractual disclaimers of warranties — which are, at least arguably, equivocal and limited — preclude any reasonable reliance in this case on a written Carfax report furnished by Payless.

Payless also relies on a provision in the fine print of the contract that "CUSTOMER SHOULD NOTE THAT THIS VEHICLE WAS ANNOUNCED HAVING UNIBODY DAMAGE AT THE AUCTION."[5] This provision,

_____

[5] As the Court of Appeals noted, this provision and others appear in capital letters. See Raysoni, 323 Ga. App. at 587 (1). No one should make the mistake of thinking, however, that capitalization always and necessarily renders the capitalized language conspicuous and prominent. In this case, the entirety of the fine print appears in capital letters, all in a relatively small font, rendering it difficult for the author of this opinion, among others, to read it. Moreover, the capitalized disclaimers are mixed with a hodgepodge of other seemingly unrelated, boilerplate contractual provisions — provisions about, for instance, a daily storage fee and a restocking charge for returned vehicles — all of which are capitalized and in the same small font.

Payless says, squarely contradicts any representation that the minivan was undamaged. Perhaps that is so, but the question for us is whether it must be so as a matter of law. That someone said that a vehicle was damaged does not make it so, and for that reason, a provision that "THIS VEHICLE WAS ANNOUNCED HAVING UNIBODY DAMAGE" is not quite the same as a disclosure that "THIS VEHICLE HAS UNIBODY DAMAGE." Moreover, when was the auction? Has any damage been repaired since then? Who made such an announcement at auction? Did they know what they were talking about? Are vehicles routinely announced at auction as having damage simply in an abundance of caution, or does such an announcement typically signify that the person making the announcement has real reason to think it so? This case comes on the pleadings, and there is no evidence about these things. Whether Raysoni understood this provision — and whether a reasonable car buyer would understand this provision — as squarely contradicting earlier and unequivocal oral and written representations that the vehicle never had been wrecked and was undamaged is not a question that courts should answer as a matter of law on the bare pleadings.

Finally, Payless relies on a provision in the fine print that "WE STRONGLY RECOMMEND CUSTOMERS SHOULD GET VEHICLE INSPECTED BY A MECHANIC OF THEIR CHOICE BEFORE MAKING THE PURCHASE." Again, this is fine advice, and perhaps a jury might conclude — considering all of the circumstances — that it was unreasonable for Raysoni to buy a used minivan without heeding it. But it does not directly and squarely contradict the representations upon which Raysoni allegedly relied when he bought the minivan, and for that reason, this advisory provision does not make his reliance unreasonable as a matter of law.

We do not mean to suggest that the provisions of the contract upon which Payless relies would not have been most reasonably understood by a customer just as Payless argues. Perhaps a reasonable customer would understand them in just that way. And perhaps the evidence will show that even Raysoni himself understood them in just that way. But we remind again that this case comes to us only at the pleadings stage, and for now, we must accept the facts as Raysoni alleges. We note as well that our analysis is driven in large part by the precise words used in this contract, as well as the arguable qualifications and contradictions that appear on the face of the contract. Perhaps different

8

contractual provisions — for instance, a comprehensive merger clause or a clear and direct disclaimer that "THIS VEHICLE IS DAMAGED" or "THIS VEHICLE HAS BEEN WRECKED" — would lead to a different result. But we do not decide such things, for that is not the case before us. On these pleadings, we cannot say as a matter of law that Raysoni will be unable to show that his reliance on representations that the minivan was undamaged and never had been in a wreck — particularly the written Carfax report — was reasonable. As such, judgment on the pleadings ought not have been awarded to Payless, and we reverse the judgment of the Court of Appeals.

Judgment reversed. All the Justices concur.