[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12534
Non-Argument Calendar

_____

D.C. Docket No. 3:14-cv-00062-TCB

C&C FAMILY TRUST 04/04/05,
by and through its Trustees, Cynthia Cox-Ott and Patricia Ann Cox,

Plaintiff-Appellant,

versus

AXA EQUITABLE LIFE INSURANCE COMPANY,
AXA ADVISORS LLC,
ARMEN HOVAKIMIAN,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 20, 2016)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff C&C Family Trust 04/04/05 (the "Trust") filed this diversity action against Defendants AXA Equitable Life Insurance Company and AXA Advisors LLC (collectively, "AXA") and Defendant Armen Hovakimian, alleging that one of its trustees, Cynthia Cox-Ott ("Cynthia"), had been induced by the fraud or negligent misrepresentations of AXA's employee/agent Hovakimian and AXA to purchase a life insurance policy. The Trust primarily alleged that Hovakimian had represented to Cynthia that the insurance policy provided for fixed annual premium payments in exchange for a $4,000,000 death benefit, but in actual fact the policy was a "flexible premium" life insurance policy that required increasing premium payments in order to keep the policy in force. The district court granted AXA's motion to dismiss the complaint, concluding that the Trust had not shown justifiable reliance on the misrepresentations because of a merger clause in the policy and because the terms of policy unambiguously contradicted the misrepresentations. The court dismissed Hovakimian because he had not been located or served.[1] On appeal, the Trust contends that AXA's motion to dismiss was erroneously granted. After careful review, we affirm the dismissal of the Trust's complaint.

---

[1] The Trust does not challenge this ruling on appeal, so we deem the issue abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-81) (11th Cir. 2014) (issues not raised prominently on appeal are deemed abandoned).

## I.

Cynthia married Claude Ott ("Claude") in 1988.[2]  They divorced in 2005. Part of the divorce settlement included the establishment of a trust, to be funded by a life insurance policy on the life of Claude, who was 67 years old at the time.  In 2005 and 2006, Cynthia had numerous discussions with Hovakimian, "an employee and/or legal agent of AXA," Doc. 1–1 ¶ 9, who provided Cynthia with various projections and illustrations for life insurance policies offered by AXA. Hovakimian represented that the projections and illustrations were "guaranteed." In August 2005, Cynthia, as trustee, selected a policy, which she believed provided for a flat annual premium of $88,000 until Claude turned the age of 90[3], with no premiums required thereafter.  The policy provided for a $4,000,000 net death benefit payable to the Trust.

The policy was delivered to the Trust on February 16, 2006.  Eight days later on February 24, Hovakimian, as agent for AXA, provided Cynthia with an

---

[2] We take these factual allegations primarily from the complaint and accept them as true for purposes of this appeal.  *See Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013).  We also rely on a 2006 policy illustration because it was attached to the complaint, *see Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215-16 (11th Cir. 2012), as well as a copy of the life insurance policy attached to AXA's motion to dismiss because it is central to the Trust's claims and its authenticity is not disputed, *see Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  We do not rely, and neither did the district court, on a 2005 illustration attached to AXA's motion to dismiss.

[3] The complaint alleges that Hovakimian told Cynthia that the policy would be paid up when Claude reached the age of 83, but then seeks reformation of the policy to provide that it would be considered paid up when Claude reached the age of 90.  This discrepancy is not explained.  In any case, the Trust uses age 90 in its initial brief on appeal, so we do so as well.

3

"Original Illustration" listing the guaranteed annual premium amount ($88,000) and net death benefit ($4,000,000). Based on these representations, the Trust decided to keep the policy in force. In her capacity as Trustee, Cynthia made an initial premium payment of $165,800, and she has paid the annual premium of $88,000 each year since the policy issued.

In July 2012, the Trust received from AXA an "Annual Report," which contained "conflicting notices, projections and illustrations." *Id.* ¶ 17. Cynthia retained counsel, who asked AXA to confirm both the amount of the annual premium and when the policy would be considered paid up. AXA did not answer. In April 2013, Cynthia submitted a formal complaint to the Office of the Insurance Commissioner of the State of Georgia. Two months later, AXA informed Cynthia that "premium increases would be required on the Policy to keep it in force," despite previous representations about guaranteed values. *Id.* ¶ 21.

In March 2014, the Trust filed suit against AXA and Hovakimian in Georgia state court. Shortly thereafter, AXA removed the action to the United States District Court for the Northern District of Georgia. In its complaint, the Trust alleged three causes of action: (1) fraud as to all defendants; (2) negligent misrepresentation as to all defendants; and (3) reformation as to AXA. The Trust alleged in broad terms that Cynthia reasonably relied on the misrepresentations about "guaranteed" premium values when she purchased the life insurance policy,

4

and she sought to reform the contract to conform to her reasonable understanding of what the policy provided.

AXA moved to dismiss the complaint with prejudice on various grounds. Relevant to this appeal, AXA contended that the Trust's negligent misrepresentation and fraud claims, based on the alleged oral and written misrepresentations by Hovakimian, were barred by a comprehensive merger clause in the life-insurance policy. AXA also argued that the Trust's reformation claim failed as a matter of law because it was derivative of the claims for fraud and negligent misrepresentation.

AXA attached to its motion to dismiss a copy of the life insurance policy. Page 1 of the policy states that it is a "Flexible Premium Universal Life Insurance Policy,"[4] which, the policy explains, means that the policyholder could, within limits, "make premium payments at any time and in any amount"; "change the Death Benefit Option"; and "reduce the face amount of insurance." A section entitled "Policy Information" beginning on Page 3 describes the Trust's policy in more detail. This section contains the following language contradicting Hovakimian's representations that the premium amounts were guaranteed: "THE PLANNED PERIOD PREMIUMS SHOWN ABOVE MAY NOT BE

---

[4] This Court has addressed claims arising from similar "flexible premium" policies once before, albeit in a different context. *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276 (11th Cir. 2007). *Adams* describes the genesis and operation of these policies in more detail. *See id.* at 1279 nn. 1 & 2.

5

SUFFICIENT TO CONTINUE THE POLICY AND LIFE INSURANCE COVERAGE IN FORCE." Doc. 3–2 at 4. This section further provides that various factors could affect the premium amount and whether the policy would continue in force, and that changes to interest rates or the cost of insurance "MAY REQUIRE MORE PREMIUM TO BE PAID THAN WAS ILLUSTRATED OR CAUSE THE CASH VALUES TO BE LESS THAN ILLUSTRATED." *Id.*

Later sections in the policy explain in more detail how the policy operates. The planned periodic premium payments ("the amount for which you [the policyholder] asked us [AXA] to bill you"—here, $88,000) are placed into a policy account. AXA credits interest to the policy account based on interest rates it determines, at a rate guaranteed to be not less than 3%, and also makes monthly deductions to pay administrative charges, the actual cost of insurance for the insured person, and the cost of any benefits provided by riders to the policy. The monthly cost of insurance is determined by AXA within limits set in the policy. So long as the net value of the policy account is sufficient to cover the monthly deductions, the policy remains in force.

In August 2014, the district court granted AXA's motion to dismiss. In relevant part, the court concluded that the policy contained a merger clause that, under Georgia law, barred the Trust's claims for fraud and negligent misrepresentation based on written and oral statements made before the insurance

6

policy was delivered to the Trust in February 2006.  The court also concluded that the policy unambiguously provided that the scheduled premium payments may not be sufficient to keep the policy in force, making reliance on misrepresentations to the contrary unreasonable as a matter of law.  Finally, the court found that the Trust's reformation claim failed because it was derivative of the claims for fraud and negligent misrepresentation.  The court dismissed the claims against AXA and ordered the Trust to serve Hovakimian by October 15, 2014.

The Trust moved the court to reconsider its order granting AXA's motion to dismiss and to extend the time to serve Hovakimian.  In May 2015, the court issued an order denying both requests.  The Trust now appeals.

## II.

We review the grant of a motion to dismiss *de novo*, applying the same standards as the district court.  *Davila v. Gladden*, 777 F.3d 1198, 1203 (11th Cir.), *cert. denied*, 136 S. Ct. 78 (2015).  We accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

7

**III.**

"Insurance is a matter of contract law and contract rules and interpretations will apply." *Life Ins. Co. of Va. v. Conley*, 351 S.E.2d 498, 500 (Ga. Ct. App. 1986).[5]  Insurance policies are liberally construed in favor of the insured and the object to be accomplished by the policy. *Barrett v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 696 S.E.2d 326, 330-31 (Ga. Ct. App. 2010).  In construing an insurance policy, the test is what a reasonable person in the position of the insured would understand the words of the policy to mean. *Id.*

Under Georgia law, a party alleging that she was fraudulently[6] induced to enter into a contract can either (1) affirm the contract and sue for damages from the fraud or breach or (2) rescind the contract and sue in tort for fraud. *Ekeledo v. Amporful*, 642 S.E.2d 20, 22 (Ga. 2007).  Here, by seeking reformation of the contract rather than rescission, the Trust affirmed the contract. *Harkins v. Channell*, 618 S.E.2d 129, 132 (Ga. Ct. App. 2005).  By affirming the contract, the Trust as a general matter is bound by the policy's terms and subject to defenses

---

[5] There is no dispute that Georgia substantive law applies in this diversity case. *See McMahan v. Toto*, 256 F.3d 1120, 1131 (11th Cir. 2001).

[6] We address the Trust's claims for fraud and negligent misrepresentation collectively because Georgia courts recognize "that the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed," *Holmes v. Grubman*, 691 S.E.2d 196, 640-41 (Ga. 2010), and the parties do not suggest that knowledge of the falsity of the information disclosed is at issue in this case.

based on the contract. *Stephen A. Wheat Trust v. Sparks*, 754 S.E.2d 640, 648-49 (Ga. Ct. App. 2014).

An essential element of claims for fraud and negligent misrepresentation under Georgia law is "justifiable reliance" on the misrepresentations by the allegedly defrauded party. *Novare Grp., Inc. v. Sarif*, 718 S.E.2d 304, 309 (Ga. 2011). The Supreme Court of Georgia has identified two barriers that may preclude a party from showing justifiable reliance as a matter of law.

First, when an allegedly defrauded party "affirms a contract that contains a merger or disclaimer provision, he is estopped from asserting reliance on a representation that is not part of the contract." *Id.*; *Ekeledo*, 642 S.E.2d at 22 (stating that an allegedly defrauded party who affirms a contract containing a merger clause generally is barred "from asserting that [she] relied upon the other party's misrepresentation and [her] action for fraud must fail." (quoting *Authentic Architectural Millworks v. SCM Grp. USA*, 586 S.E.2d 726 (Ga. Ct. App. 2003)); *see First Data POS, Inc. v. Willis*, 546 S.E.2d 781, 784 (Ga. 2001). "In essence, a merger clause operates as a disclaimer of all representations not made on the face of the contract." *Ekeledo*, 642 S.E.2d at 22.

Second, "when one is bound by a contract that includes terms that expressly, conspicuously, unambiguously, and squarely contradict precontractual representations, any reliance upon those precontractual representations may be

9

deemed unreasonable as a matter of law." *Raysoni v. Payless Auto Deals, LLC*, 766 S.E.2d 24, 26 (Ga. 2014).

"There is a low threshold for establishing ambiguity in an insurance policy" under Georgia law. *St. Paul Mercury Ins. Co. v. Fed. Deposit Ins. Co.*, 774 F.3d 702, 709 (11th Cir. 2014). "Ambiguity in an insurance contract is duplicity, indistinctiveness, uncertainty of meaning of expression, and words or phrases which cause uncertainty of meaning and may be fairly construed in more than one way." *Id.* (quotation marks omitted). An insurance policy is ambiguous if it is susceptible to two or more reasonable and logical constructions. *Id.*

The district court found that the following provision in the insurance policy was a "merger clause" that barred the Trust from relying on representations outside of the policy itself: "This policy, any riders or endorsements, and the attached copy of the initial application and all subsequent applications to change this policy, and all additional Policy Information sections added to this policy, make up the entire contract. . . . Only our Chairman of the Board, our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it." The Trust contends that this clause does not operate to bar its claims of fraudulent inducement for at least three reasons.

First, the Trust argues that the purported "merger clause" is not a "comprehensive" clause that bars its claims because the clause does not disclaim

10

reliance on prior agreements not contained in the contract itself.  However, while disclaimer language is generally included in a "standard merger clause," *see First Data POS, Inc.*, 546 S.E.2d at 783, such language is not a required element of a valid merger clause under Georgia law.  For example, the Supreme Court of Georgia in *Ekeledo* characterized the following provision as a valid "merger" or "entire agreement" clause that barred claims of fraudulent inducement: "This contract constitutes the sole and entire agreement between the parties and no modifications of this contract shall be binding unless attached hereto and signed by all parties to this agreement."  642 S.E.2d at 21; *see also Herman Homes, Inc. v. Smith*, 547 S.E.2d 591, 592 (Ga. Ct. App. 2001) ("[A]ny other agreement entered into by any parties in connection with this transaction is attached to the sales contract. This contract constitutes the entire agreement between the parties, and no change or modification shall be made without the prior written consent of both parties.").

Here, the disputed provision states that certain specified documents "make up the entire contract," and that only certain executives with AXA may modify the policy.  Like the clause in *Ekeledo*, this provision states that the policy is the entire agreement without disclaiming all prior written or oral agreements between the parties regarding the subject matter of the contract.

11

The Trust also relies on *Raysoni* in arguing that the clause is not comprehensive.  However, we find the Trust's reliance on *Raysoni* misplaced.  In *Raysoni*, the Supreme Court of Georgia held that a clause in a sales contract providing that "NO SALESMAN VERBAL REPRESENTATION IS BINDING ON THE COMPANY" was at most only a "partial merger clause" limited to verbal representations.  766 S.E.2d at 26.  As a result, the Court held, the clause did not bar a plaintiff's fraud claims because the plaintiff also relied on a written document given to him by the defendant.  *Id.*  In this case, the merger clause lists the documents constituting the "entire contract"; it does not state, as in *Raysoni*, what is not part of the contract.  Because the alleged misrepresentations are not contained within those documents constituting the "entire contract," the entire-agreement clause in the policy, though non-standard, operates as a disclaimer against reliance on those representations.  *See Ekeledo*, 642 S.E.2d at 22.

Second, the Trust contends that the merger clause is ambiguous because Cynthia could reasonably have understood that the illustrations and projections provided by AXA and Hovakimian were "additional Policy Information sections added to this policy," and therefore part of the "entire contract."  However, the illustration itself plainly disclaims near the bottom of the page, "THIS ILLUSTRATION IS NOT PART OF THE LIFE INSURANCE POLICY OR CONTRACT."  Nor did the Trust allege that the illustration was delivered with the

12

policy, which may have indicated that it was part of the policy. As a result, we agree with the district court that the merger clause was not ambiguous.

Third, the Trust contends that the merger-clause doctrine does not apply to adhesion contracts such as the insurance policy at issue, but rather applies only in situations where a contract was negotiated by parties with equal bargaining power, such as "sophisticated business parties or persons represented by counsel." The Trust does not cite, and research has not revealed, any Georgia authority directly addressing this question.[7]

However, our review of Georgia law does not support the Trust's position. While insurance policies are contracts of adhesion, *Barrett*, 696 S.E.2d at 331, "contracts of adhesion are enforceable in Georgia, even though they are strictly construed against the drafter," *Mathis v. Orkin Exterminating Co., Inc.*, 562 S.E.2d 213, 215 (Ga. Ct. App. 2002). And by affirming the insurance policy, the Trust is bound by its terms. *Sparks*, 754 S.E.2d at 648. Of course, we construe any

---

[7] The Sixth Circuit has addressed the effect of a merger clause in a similar "flexible premium" life insurance policy under Ohio law, finding that the clause barred reliance on misrepresentations not contained within the contract. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 518 (6th Cir. 1999). Nonetheless, the court held that the clause did not bar reliance on representations within the contract itself, and, relying on those representations, the court found that the contract was ambiguous. *See id.* at 518-19. This analysis appears to be consistent with Georgia law, which holds that a merger clause "does not prevent a claim of fraud arising from representations in the contract itself." *Conway v. Romarion*, 557 S.E.2d 54, 58 (Ga. Ct. App. 2001). In this case, however, the Trust's complaint does not allege that Cynthia was misled by any representation in the contract itself.

13

ambiguity in the policy against the insurer, but still we must find some ambiguity first.

In addition, recent statements of the merger-clause doctrine by the Supreme Court of Georgia make no reference to the relative sophistication of the parties. *See, e.g.*, *Raysoni*, 766 S.E.2d at 26 ("[W]hen one has entered a contract with a binding and comprehensive merger clause, any reliance upon precontractual representations is, generally speaking, unreasonable as a matter of law."); *see also Legacy Acad., Inc. v. Mamilove, LLC*, 771 S.E.2d 868, 872 (Ga. 2015). For example, in *Raysoni*, an individual plaintiff purchased a used car from a used car lot. 766 S.E.2d at 25-27. The Court did not indicate that the merger-clause doctrine would not apply in that situation. Instead, it found that the purported merger clause was not comprehensive.

The most favorable case to the Trust's position arguably is *Collins v. Life Ins. Co. of Ga.*, 491 S.E.2d 514 (Ga. Ct. App. 1997). In *Collins*, the plaintiff, Collins, alleged that an agent of the insurer negligently misrepresented the extent of his coverage. *Id.* at 515. Collins had been given a "proposal/worksheet" showing coverage for prosthesis, but the actual policy did not provide such coverage. *Id.* There, as here, the insurer contended that the plaintiff could not have been misled by the proposal/worksheet because "the policy states that the policy constitutes the entire contract." *Id.* The court ultimately concluded that the

14

plaintiff's claims survived summary judgment because a jury reasonably could conclude that "the defendant's agents presented and demonstrated the proposal/worksheet to Collins as a means to solicit his purchase of the policy and explain its meaning" and that Collins reasonably relied on the proposal in buying the policy.  *Id.* at 516.

Despite its similarities to the instant case, we do not find *Collins* persuasive in these circumstances because it did not discuss the effect or significance of the merger clause, or even whether the insurer's contention that there was a merger clause was in fact accurate.  The court's *sub silentio* treatment of the merger clause provides no guidance in these circumstances.  And the decision is difficult to reconcile with the decisions of the Supreme Court of Georgia discussed above.

Nor did *Collins* state the general rule that an insured is required "to read and examine an insurance policy to determine whether the coverage desired has been furnished."  *See Heard v. Sexton*, 532 S.E.2d 156, 158 (Ga. Ct. App. 2000).  Since it was decided in 1997, our research reveals that *Collins* has been cited only once for its holding with respect to negligent representation.  In that case, *Heard*, the court explained that there were two exceptions to the rule requiring insureds to read and examine an insurance policy.  *Id.*  The court indicated that *Collins* fell within the second exception, applicable "where the evidence reflects a special relationship of trust or other unusual circumstances which would have prevented or

15

excused plaintiff of his duty to exercise ordinary diligence." *See id.* (ellipsis, brackets, and internal quotation marks omitted).

Here, however, the Trust has not alleged sufficient facts to show a special relationship of trust or other unusual circumstances that would excuse the Trust from its duty to exercise ordinary diligence. To the contrary, the Trust specifically alleged that Hovakimian was an agent or employee of AXA.[8] As a general matter under Georgia law, no fiduciary or confidential relationship exists between an insured and the insurer or the insurer's agents. *Fowler v. Prudential Prop. & Cas. Ins. Co.*, 449 S.E.2d 157, 158 (Ga. Ct. App. 1994). Absent a fiduciary or confidential relationship, a party to a contract who can read must read the contact and will be bound by its terms unless she was prevented from reading the contract. *See State Farm Fire & Cas. Co. v. Fordham*, 250 S.E.2d 843, 845 (Ga. Ct. App. 1978); *see Sarif*, 718 S.E.2d at 308 ("[T]he only type of fraud that can relieve a party of his obligation to read a written contract and be bound by its terms is a fraud that prevents the party from reading the contract."). The Trust does not allege that Cynthia was prevented from reading the contract or that she relied on anything other than Hovakimian's misrepresentations and the policy illustrations

---

[8] The Trust claims that the district court failed to analyze whether Hovakimian was AXA's agent, such that AXA could be held liable for Hovakimian's misrepresentations. However, the Trust alleged in its complaint that Hovakimian was AXA's agent or employee, or both, an allegation we accept as true. The district court's analysis did not turn on whether an agency relationship existed between AXA and Hovakimian, and we presume that AXA could be held liable for Hovakimian's representations.

16

and projections.  Under Georgia law, "[t]here is no legal relief afforded when one blindly relied on the representations of the [other party] as to matters of which he could have informed himself."  *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1171 (11th Cir. 1997).

The unambiguous terms of the insurance policy preclude the Trust from claiming justifiable reliance on the alleged misrepresentations.  *Raysoni*, 766 S.E.2d at 26.  As the district court recognized, the Trust's fraud and negligent-misrepresentation claims were based on misrepresentations that the annual premium payments were fixed, as opposed to variable, and subject to increase in order to keep the policy in force.  Thus, the critical question is whether the insurance policy itself unambiguously discloses that additional payments beyond the planned premium amount may be necessary to keep the policy in force.  We find, as the district court did, that the policy does so: "THE PLANNED PERIODIC PREMIUMS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE POLICY AND LIFE INSURANCE COVERAGE IN FORCE."  Doc. 3–2 at 4.  Further, the policy states that more premium may be required than was illustrated based on the amount of interest credited to the policy and the amount of cost of insurance and other expenses.

The Trust asserts that the policy is ambiguous because the statement that more premiums may be required is preceded by the clause "SUBJECT TO

17

GUARANTEES." The Trust claims that such "guarantees" could reasonably be understood to cover the guaranteed premium values reflected in the illustrations. However, "subject to guarantees" plainly qualifies the insurer's "right to change the amount of interest credited to the policy and the amount of the cost of insurance or other expense charges deducted under the policy," and cannot reasonably be construed as referring to a guaranteed premium amount, given that the sentence then states that the interest-rate and cost-of-insurance changes "may require more premium to be paid than was illustrated." We are unpersuaded by the Trust's other attempts to insert ambiguity into the policy.[9]

While we are troubled by the allegations in the Trust's complaint, we are constrained to conclude that, because the Trust affirmed the contract, the merger provision in the insurance policy and the unambiguous terms of the policy itself preclude the Trust from showing "justifiable reliance" as a matter of law under Georgia law. *See Raysoni*, 766 S.E.2d at 26. The policy is clear that the $88,000 premium amount may not be sufficient to keep the policy in force. Accordingly, the district court properly dismissed the Trust's claims for fraud and negligent misrepresentation.

---

[9] The Trust relies on several similar federal district-court opinions finding flexible life insurance policies to be ambiguous under Georgia law. *See, e.g.*, *McBride v. Life Ins. Co. of Va.*, 190 F. Supp. 2d 1366, 1377-78 (M.D. Ga. 2002). We express no opinion on the merits of these rulings but find these cases distinguishable because the language of the policies and the bases for the plaintiffs' claims in those cases are not identical to the policy and claims in this case.

18

## IV.

We also affirm the district court's dismissal of the Trust's claim for reformation of the contract.  Reformation of a written instrument is an equitable remedy available when, *inter alia*, the unilateral mistake of one party is accompanied by the fraud or inequitable conduct of the other party.  *Frame v. Hunter, Maclean, Exley & Dunn, P.C.*, 511 S.E.2d 585, 587 (Ga. Ct. App. 1999); *see Lee v. Am. Cent. Ins. Co.*, 530 S.E.2d 727, 730 (Ga. Ct. App. 1999) ("The remedy is not available for the purpose of making a new and different contract for the parties, but is confined to establishment of the actual agreement.").  However, reformation is not available "if a party by reasonable diligence could have known the truth."  *Frame*, 511 S.E.2d at 587.  In light of our holding that the Trust could have by reasonable diligence known the truth of the insurance policy, the Trust cannot proceed on its reformation claim.

## V.

Finally, the district court did not abuse its discretion by not granting the Trust leave to amend the complaint.  When the Trust requested leave to amend its complaint in its brief in opposition to AXA's motion to dismiss, it was within the discretion of the district court to deny that request *sub silentio*.  *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).  "Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the

19

issue has not been raised properly." *Id.* (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir.1999)).  The Trust also failed to attach a copy of its proposed amendment or to describe the substance of its proposed amendment. *See id.*  In addition, the Trust asked for leave to amend its complaint only "should the Court agree with AXA that Plaintiffs have not met Rule 9(b)'s standard."  But the court did not with agree with AXA in that respect, so it is understandable that the court found no reason to grant leave to amend.

## VI.

In sum, we **AFFIRM** the district court's dismissal of the Trust's complaint against AXA.