**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 31, 2019**

# In the Court of Appeals of Georgia

A19A1285. GRYDER et al. v. CONLEY et al.

McFADDEN, Chief Judge.

In 2014, Trey Conley and Daniel Gryder established an aviation management business incorporated as Elite Flight Group, LLC ("EFG"), owned equally by the two men's LLCs (Conley Aeronautics and Gryder Networks) and managed by Conley. In June 2016, Conley closed down the company, terminated Gryder's health insurance, and locked him out. When Conley filed an application to dissolve the company, Gryder and Gryder Networks counterclaimed for breach of contract, conversion, and other claims. On appeal from the grant of summary judgment to Conley on the counterclaims, Gryder and his LLC argue that questions of fact remain as to those claims and that the trial court should have granted their own motion for summary judgment. Because we conclude that the parties' conduct creates questions of material

fact as to some of Gryder and his LLC's claims, including the existence of a contract between Conley and Gryder, we reverse in part and remand for further proceedings.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991).

Thus viewed in favor of Gryder and the LLC, the record shows that Conley and Gryder met in 2012 and began discussing going into business together in late 2013. On March 27, 2014, Conley emailed a "memorandum of understanding" detailing a "non-binding relationship" between the two men to Gryder. According to the memorandum, Gryder would take "early retirement" from his position at Delta Airlines and would "use his credentials as a pilot and flight instructor" to further the business, while Conley would manage the company with the understanding that "from time to time the business may need an injection of capital or a loan," that Gryder would be paid "at a minimum $5,000 on a monthly basis," and that Conley would "secure" and pay for "an acceptable health insurance policy for the business[.]" The memorandum noted that it was effective for "a period of five years from the date of

2

signing" and would be "reviewed at least annually" and that its execution was "not a formal undertaking," but also "implie[d] that the signatories will strive to reach, to the best of their ability, the objectives stated" in it. Gryder signed the memorandum on March 28. Conley's signature does not appear on the copy of the memorandum before us. At around the same time, Conley signed an operating agreement which designated the parties' respective LLCs as EFG's members and Conley as EFG's manager. The operating agreement did not contain a merger clause and, although it identified Conley's status and powers as manager, did not lay out any details as to Gryder's responsibilities or the company's day-to-day operations.

On March 31, 2014, Conley's LLC paid Gryder the first of the $5,000 payments described in the memorandum. On the same day, Gryder gave Delta notice that he was retiring and signed the last page of the operating agreement. Conley forwarded the executed copy of the operating agreement to Gryder and also wrote:

> I have the original copy of our other agreement that you signed and left with me. I have now also signed it and it is kept with my original copy of this operating agreement at my house.

> I think you worry too much. I am sitting on $16M. Regardless of the profit or loss of this new venture, your family needs will be met. I promise!

Trey Conley duly obtained health insurance for Gryder and his family and began paying EFG's business expenses by means including loans from Conley's LLC.[1] In the course of 2015 and 2016, Gryder's services as a flight instructor generated more than $200,000 for EFG.

On January 14, 2015, Conley's daughter transferred $3,000 to EFG. On June 3, 2015, Conley transferred $3,000 from EFG's bank account to his daughter as repayment of a loan she had purportedly made to the LLC on May 21. EFG's bank records do not show that any such loan was made. In February 2016, and although EFG had never turned a profit, Conley transferred $4,000 from EFG's account to "pay back [a] loan from [himself]." At Conley's request, Gryder flew Conley's family to Antigua and other destinations for non-business purposes. Conley also sold one of his personal aircraft at a profit of approximately $70,000 after a period in which EFG was maintaining that and other aircraft. Conley never reimbursed EFG for those maintenance costs.

---

[1] In 2016, for example, the loans payable to Conley's LLC amounted to over $9,000.

In the fall of 2016, after Conley discovered that Gryder had not disclosed his two suspensions by the FAA, one of which resulted in Gryder's arrest, the relationship between the two men deteriorated. On October 31, 2016, Conley's attorney sent Gryder a letter stating that the men's "business arrangement . . . must be terminated." A few days later, Conley shut down EFG's website; disabled Gryder's email accounts (including the personal MindSpring account Gryder had been using since at least 2011); terminated Gryder's health insurance; locked Gryder out of the company hangar; and transferred EFG's remaining funds to Conley's personal account. Gryder never recovered years' worth of emails sent to and from his MindSpring account before June 9, 2016, including pictures of his wife, who had died in 2011.

On December 20, 2016, Conley's LLC brought the instant application for the judicial dissolution of EFG. As later amended, and with Conley and Gryder personally joined, Conley and his LLC asserted claims of fraud, breach of fiduciary duty against Gryder and his LLC, and also sought attorney fees and punitive damages. Gryder himself asserted counterclaims for breach of contract (the memorandum of understanding); promissory estoppel; defamation; violations of the Georgia Computer Systems Protection Act, OCGA § 16-9-93, and the Stored Communications Act, 18

5

USC § 2701; and attorney fees and costs. Gryder's LLC asserted counterclaims for an accounting, declaratory relief, conversion, breach of fiduciary duty, unjust enrichment, breach of contract, and attorney fees and costs. The trial court initially denied the parties' cross-motions for summary judgment. When Conley renewed his motion, accompanied by new evidence in an unrelated Arkansas dispute that Gryder was exploring a business opportunity in the summer of 2016, the trial court applied the rule in *Prophecy Corp. v. Charles Rossignol, Inc*, 256 Ga. 27 (343 SE2d 680) (1986);[2] held that Gryder had not intended to be bound by the memorandum; and granted summary judgment to Conley and his LLC on Gryder's counterclaim for breach of contract. The trial court also granted Conley summary judgment on Gryder's counterclaims for promissory estoppel and computer trespass and on all of Gryder Networks' counterclaims.

On appeal from that judgment, Gryder and his LLC assert that the grant of summary judgment was erroneous because questions of fact remain as to Gryder's counterclaims for breach of contract, promissory estoppel, and computer trespass.

---

[2] The *Prophecy* rule is that "if on motion for summary judgment a party offered self-contradictory testimony on the dispositive issue in the case, and the more favorable portion of his testimony was the only evidence of his right to a verdict in his favor, the trial court must construe the contradictory testimony against him." 256 Ga. at 28 (1).

Gryder and his LLC also assert that questions of fact remain as to Gryder Networks' counterclaims for conversion, breach of fiduciary duty, and unjust enrichment, and that their own motion for summary judgment should have been granted.

1. Gryder Networks argues that a question of fact remains as to whether Conley converted Gryder Networks' equipment, tools, and other property. We agree.

"Under Georgia law, conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Farm Credit of Northwest Fla., ACA v. Easom Peanut Co.*, 312 Ga. App. 374, 381 (3) (a) (718 SE2d 590) (2011) (citation and punctuation omitted). If the defendant came into possession of the property lawfully, the plaintiff must show that the defendant "unlawfully refuse[d] to return the plaintiff's property after the plaintiff demand[ed] its return. . . ." *Williams v. Natl. Auto Sales*, 287 Ga. App. 283, 285 (1) (651 SE2d 194) (2007). Such is the case here, and whether Conley unlawfully refused to return Gryder's property is a question of disputed fact.

Conley does not dispute that he possessed the property or that Gryder demanded its return, but he argues that he made multiple good faith attempts to return

7

it. Gryder testified that none of Conley's offers of opportunities for Gryder to remove the property were for sufficient time to allow him to remove it. This is some evidence that creates a question of fact on the issue of conversion. See *Thomas v. Statewide Beverage Equipment*, 152 Ga. App. 293, 294 (1) (262 SE2d 575) (1979).

2. Gryder Networks argues that a question of fact remains as to whether Conley breached fiduciary duties owed to Gryder Networks. We agree.

Conley admits that he owed fiduciary duties to Gryder Networks. He argues that Gryder Networks has not demonstrated that it suffered damages from any breach, because any damages Gryder Networks may have suffered were outweighed by the benefits it received for engaging in the same behavior — using EFG services and resources without paying for them.

Gryder Networks points to evidence that the benefits Gryder Networks received, maintenance of its aircraft, were contemplated by the parties' arrangement so that Gryder's aircraft could be used to generate revenue for EFG. It points to evidence that services provided to Conley's aircraft, on the other hand, were a benefit to Conley personally.

Moreover, Conley bases his argument that he is entitled to summary judgment on expert opinion testimony regarding the value of the services. But "when the

8

evidence on a dispositive issue consists of opinion evidence, such evidence alone can never sustain an award of summary judgment, [although it] can be sufficient to preclude an award of summary judgment." *Scott v. Owens-Illinois, Inc.*, 173 Ga. App. 19, 22 (2) (325 SE2d 402) (1984). Conley was not entitled to summary judgment on the breach of fiduciary duties claim. *Young v. Faulkner*, 251 Ga. App. 847 (555 SE2d 221) (2001) (reversing grant of summary judgment on issue of damages, where opinion evidence of value was the only evidence). For the same reasons, a question of fact also remains as to Gryder Networks' claim for unjust enrichment, which a jury would be entitled to consider in the event that it finds no enforceable contract.

3. Gryder challenges the trial court's grant of summary judgment to Conley on Gryder's breach-of-contract counterclaim. He asserts that the memorandum of understanding was a contract to which he was party (unlike the operating agreement to which the LLCs were parties). He first argues that a question of fact remains as to whether the parties engaged in part performance of the terms outlined in the memorandum sufficient to save those terms from the statute of frauds. We agree.

(a) The trial court held that Gryder's testimony as to his exploration of other business opportunities in the summer of 2016 contradicted his other testimony that he was under contract at EFG, such that the *Prophecy* rule applied and Gryder's

9

testimony in his own favor demanded a grant of summary judgment. Even according to the trial court's own rationale, however, Gryder's actions in exploring other opportunities do not necessarily show that he was no longer employed by EFG by the summer of 2016, and have no bearing at all on whether he was thus employed between April 2014 and the summer of 2016. Gryder only began to explore other employment options after Conley stopped paying him – evidence that goes to the question of breach, if any, and not to the question of the enforceability of any original contract. The trial court thus erred when it applied the *Prophecy* rule in this context. See *Founders Kitchen & Bath v. Alexander*, 334 Ga. App. 389, 393-394 (779 SE2d 668) (2015) (reversing a grant of summary judgment when a trial court erred in applying the *Prophecy* rule to exclude a party's "purported contradiction" concerning the existence or non-existence of a contract when the party offered a reasonable explanation for that contradiction).

(b) Because the memorandum had no specific starting date and a term of five years, it was subject to the statute of frauds, which requires that "[a]ny agreement that is not to be performed within one year from the making thereof" must be "in writing and signed by the person to be charged therewith[.]" OCGA § 13-5-30 (a) (5). The statute of frauds cannot be used to defeat a contract, however, when "there has been

such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance." OCGA § 13-5-31 (3).

Although "a court will not enforce an agreement where it is left to ascertain the intention of the parties by conjecture[,] Georgia law does not favor destruction of contracts on grounds of uncertainty, such that an indefinite contract may acquire more precision and become enforceable because of the subsequent words or actions of the parties." (Citations and punctuation omitted.) *McElvaney v. Roumelco, LLC*, 331 Ga. App. 729, 733 (1) (771 SE2d 419) (2015). "Sometimes 'the only conduct of the parties manifesting intent is the express language of the agreement,' but 'in other instances, the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement.'" *Fletcher v. C. W. Matthews Contr. Co.*, 322 Ga. App. 751, 753-754 (1) (a) (746 SE2d 230) (2013), quoting *Cox Broadcasting Corp. v. Nat. Collegiate Athletic Assn.*, 250 Ga. 391, 395 (297 SE2d 733) (1982). And just as it "is a question for the jury as to whether there was part performance when the evidence tends to prove such performance[,]" *Smith v. Cox*, 247 Ga. 563, 564 (277 SE2d 512) (1981) (citations and punctuation omitted), a jury must also decide whether evidence

extrinsic to the contract shows that a party assented to that contract. *Fletcher*, 322 Ga. App. at 754 (1) (a).

As a preliminary matter, there is no evidence to support the conclusion that the memorandum, was superseded by the operating agreement. See *Raysoni v. Payless Auto Deals, LLC*, 296 Ga. 156, 157-158 (766 SE2d 24) (2014) (partial merger clause was not comprehensive and did not bar reliance on written representations outside the scope of that merger clause). And pretermitting whether Conley's signature on the email of March 27 amounted to an electronic signature on the memorandum,[3] there was substantial evidence here, admitted to by Conley, that both parties performed for at least two years in accordance with some of the specific terms laid out in the memorandum, including that Gryder would retire from Delta to serve as a marketer and pilot for EFG and that Conley would pay Gryder a $5,000 monthly salary and obtain health insurance for him and his family. It follows that the trial court erred when it concluded as a matter of law that no enforceable contract existed between the two men. *McElvaney*, 331 Ga. App. at 731, 734 (1) (reversing a grant of summary judgment when a party's email referring to a "done deal" and his later memoranda

_____

[3] See, e.g., OCGA § 10-12-2 (8) (defining an "[e]lectronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record").

12

raised a question of fact as to his intent to grant the other party an enforceable ownership interest in an LLC); *Turner Broadcasting System v. McDavid*, 303 Ga. App. 593, 599-600 (1) (a) (ii) (693 SE2d 873) (2010) (finding a jury question as to the parties' intent to be bound, despite non-binding language in a letter of intent, on the basis of oral statements that "we have a deal" and the "deal is done").

4. A question of fact also remains as to Gryder's claim for promissory estoppel, which a jury would be entitled to consider in the event that it finds no enforceable contract.

The essential elements of promissory estoppel are:

(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

(Footnote omitted.) *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 412 (5) (634 SE2d 162) (2006); see also OCGA § 13-3-44 (a). "[T]he promise need not meet the formal requirements of a contract, [but] it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment." (Citation and

13

punctuation omitted.) *Mooney v. Mooney*, 245 Ga. App. 780, 783 (538 SE2d 864) (2000).

"Although promissory estoppel does not apply to vague, indefinite promises," a trier of fact could conclude that Conley's promise to employ Gryder for five years at a salary of $5,000 per month and benefits including health insurance "was sufficiently definite to be enforced[.]" (Citation and punctuation omitted.) *Cheeley Investments v. Zambetti*, 332 Ga. App. 115, 119-120 (2) (770 SE2d 350) (2015) (promise to pay attorney fees and legal expenses sufficiently definite to be enforced). Further, "[q]uestions of reasonable reliance are usually for the jury to resolve." (Citation omitted.) *Ambrose v. Sheppard*, 241 Ga. App. 835, 837 (528 SE2d 282) (2000). Here, for example, it is undisputed that Gryder left his job at Delta after Conley made the first salary payment to him and represented that he would take care of his "family needs," closing with the words, "I promise!" For these reasons, we reverse the trial court's grant of summary judgment to Conley on Gryder's promissory estoppel claim.

5. Gryder also argues that a question of fact remains as to whether Conley committed computer trespass when he deleted emails from Gryder's MindSpring account. Again, we agree.

14

(a) Georgia's Computer Systems Protection Act (CSPA), OCGA § 16-9-93, provides in relevant part:

(b) *Computer Trespass*. Any person who uses a computer or computer network *with knowledge that such use is without authority* and with the intention of: (1) *Deleting or in any way removing, either temporarily or permanently, any computer program or data* from a computer or computer network; (2) Obstructing, interrupting, or in any way interfering with the use of a computer program or data; or (3) Altering, damaging, or in any way causing the malfunction of a computer, computer network, or computer program, regardless of how long the alteration, damage, or malfunction persists[,] shall be guilty of the crime of computer trespass.

. . .

(g) *Civil Relief; Damages.* (1) Any person whose property or person is injured by reason of a violation of any provision of this article *may sue therefor and recover for any damages sustained and the costs of suit.*

(Emphasis supplied.) OCGA § 16-9-92 (18) defines "[w]ithout authority" to include "the use of a computer or computer network in a manner that exceeds any right or permission granted by the owner of the computer or computer network."

Although Conley insists that there is no evidence to support a finding that he intentionally deleted Gryder's personal email account, the circumstances of that

15

deletion, including Gryder's maintenance of the account after the establishment of EFG and Conley's lack of notice to Gryder of any of the actions taken in the course of terminating the company, would authorize a jury to find that Conley deleted the account with the knowledge that he did so without authority. See *Lyman v. Cellchem Intern.*, 335 Ga. App. 266, 272-274 (2) (779 SE2d 474) (2015) (affirming the denial of a motion for new trial when some evidence supported a jury's verdict that appellant employee's use of a thumb drive without authority to do so amounted to computer theft and trespass under OCGA § 16-9-93), reversed on other grounds, 300 Ga. 475 (796 SE2d 255) (2017); *Lagroon v. Lawson*, 328 Ga. App. 614, 623 (4) (b) (759 SE2d 878) (2014) (malice needed to make out an action for malicious prosecution "may be inferred from circumstances"). Compare *Sitton v. Print Direction, Inc.*, 312 Ga. App. 365, 367-368 (1) (718 SE2d 532) (2011) (employer's clicking on e-mail listing that appeared on employee's personal computer and printing of e-mails that confirmed employee was impermissibly using competing business to compete with employer did not show intent necessary to constitute computer theft under the CSPA).

(b) Although Gryder asserts in passing that his claim for a violation of the federal Storage Communications Act remains viable, he has not applied that law to the facts at issue, with the result that he sheds no light on the significant "debate [that]

16

surrounds the issues" raised by that law. *Vista Marketing, LLC v. Burkett*, 812 F.3d 954, 963 (II) (A) (11th Cir. 2016). We remind counsel that

> [r]hetoric is not a substitute for cogent legal analysis, which is, at a minimum, a discussion of the appropriate law as applied to the relevant facts. . . . [A]ppellate judges should not be expected to take pilgrimages into records in search of error without the compass of citation and argument.

(Citation and punctuation omitted.) *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000). Because Gryder has not offered us any significant application of the federal law to these facts, nor any explanation of the difference between the Georgia and federal statutory schemes, we deem this issue abandoned. See *Cancel v. Medical Ctr. of Central Ga.*, 345 Ga. App. 215, 223-224 (1) (c) (812 SE2d 592) (2018) (declining to consider issue of a Georgia statute's preemption by its federal counterpart when the issue was not adequately raised below).

6. In light of our holdings, we cannot conclude that Gryder and Gryder Networks are entitled to summary judgment on Conley's and his LLC's claims for fraud, breach of fiduciary duty, attorney fees, and punitive damages. We therefore reverse the trial court's grant of summary judgment as to Gryder Networks' claims,

17

reverse as to Gryder's personal claims for breach of contract, promissory estoppel and computer trespass, and remand for further proceedings consistent with this opinion.

*Judgment affirmed in part and reversed in part, and case remanded with direction. McMillian, P. J., and Senior Appellate Judge Herbert E. Phipps, concur.*